# STATE v. BOWMAN.

No. 5847. Decided July 20, 1937. (70 P. [2d] 458.)

*J. R. Thomas* and *Matthew Cowley*, both of Salt Lake City, for appellant.

*Joseph Chez*, Atty. Gen., and *Zelph S. Calder*, Deputy Atty. Gen., for the State.

FOLLAND, Chief Justice.

The only questions raised by this appeal are whether the witness Dee Werz was, as a matter of law, an accomplice, or, if not an accomplice to the crime of burglary, if an accessory after the fact or guilty of receiving stolen property knowing it to be stolen did his testimony nevertheless come under the statutory rule requiring corroboration of accomplice testimony.

Appellant was charged with and convicted of the crime of burglary in the second degree committed in the nighttime of August 25, 1935, by breaking and entering the store of the Western Arms & Sporting Goods Company with intent to steal. Roy Hartman, who was charged jointly with

Bowman, pleaded guilty and was sentenced to serve a term of imprisonment in the Utah state prison. Bowman pleaded not guilty and was tried. At this trial Hartman testified that Bowman was with him and assisted in the burglary and the taking of a number of guns and revolvers from the Western Arms store in the early morning of Sunday, August 25th; that he and appellant placed the guns in boxes and later in the day called on Dee Werz at his place of employment and asked to be permitted to store the boxes at his home. Werz consented and went with the other men to his home where the boxes were stored in the basement.

Under the statute, section 105-32-18, R. S. Utah 1933,

"A conviction shall not be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself and without the aid of the testimony of the accomplice tends to connect the defendant with the commission of the offense."

The court instructed the jury that Hartman was an accomplice and that the defendant could not be convicted on his testimony unless it was corroborated by other testimony which tended to connect the defendant with the commission of the crime of burglary as provided by the statute. The State relied on the testimony of Werz to supply such corroboration. There is no evidence in the record tending in any way to connect appellant with the commission of the crime of burglary except the direct testimony of Hartman that he participated in the crime and the corroboration of Werz tending to show his connection with the stolen goods.

Werz testified that at about 10:30 or 11 o'clock Sunday morning, August 25th, Hartman and Bowman came to his place of employment driving a truck on which were two boxes; that Hartman asked if he could store the boxes at the Werz home and the witness replied in the affirmative and went with the men to his home; that Hartman and Bowman carried the boxes into the basement and the witness assisted by helping to lift one of the boxes, which was heavy, onto a ledge in the basement; that he did not know

what the boxes contained and made no inquiry; that on the 29th of August, police officers came to his house and took the boxes away; that he afterwards saw them at the police station. Other witnesses identified the contents of the boxes as guns and revolvers that had been taken from the Western Arms store on August 25th.

Appellant contends that Werz is an accomplice in the crime of burglary and that the trial court should have so held and taken the case from the jury, since there was no evidence of corroboration connecting appellant with the crime except that of Werz. It is contended that Werz aided and abetted in the commission of the crime because of the testimony of Hartman to the effect that he, knowing the burglary was to be committed, consented to the storing of the stolen property in his home, and aided in making the boxes in which the guns were placed. Hartman testified that prior to the bringing of the boxes containing the guns to Werz for storage, the boards used in making one of the boxes were obtained from the scrap pile at the place where Werz was employed and that Werz aided by throwing some of the boards on the truck. When this occurred is not stated, but the inference is rather clear from the following testimony that it was after and not before the burglary:

"Q. Who did you get them from [referring to the boards]? A. Well, we got them off the scrap pile there, that was there at the time.

"Q. Dee Werz was there at the time? A. Yes.

"Q. He got the boards for you, didn't he? A. We picked them up between us and threw them on the truck.

"Q. He was there at the time? A. Yes sir.

"Q. Was anything said about what those boards were for? A. I believe we said that we were going to make some boxes with them.

"Q. Anything said about what you wanted the boxes for? A. Well, we told him we had some 'hot stuff' we were going to put in them.

"Q. Did you tell him what you had? A. I can't remember. I think we did.

"Q. What did you tell him? A. I told him we made the Western Arms.

"Q. Do you want to say that Johnny Bowman was with you when you got the wood? A. He was.

"Q. When you got the wood to make the boxes? A. Yes.

"Q. Had you previously talked to Dee Werz about taking these boxes with guns in down to his home? A. Well, not exactly. * * *

"Q. Well, you took these boxes down to Dee Werz's home, did you? A. Yes sir.

"Q. What arrangement had you made with him before that time about taking the boxes to his home? * * * * A. The subject was brought up at a time prior to that, that in case that we got anything we could leave it in his house, but the fact of making arrangements to leaving the guns there, there wasn't any arrangement made before it was taken.

"Q. The arrangement was made to leave anything there, was it? A. Yes.

"Q. And you did leave the guns there? A. When we got these rifles, we did.

"Q. Did you talk to him about what was in those boxes? A. I think we did. * * *

"Q. Did you tell him there were guns in there? A. I think we did. * * *

"Q. Did you say anything to Mr. Werz about this Western Arms burglary before it took place? A. Well, I won't say for certain we mentioned the Western Arms in particular. We mentioned getting some guns.

"Q. You didn't mention the Western Arms to him particularly? A. No, not particularly."

The court instructed the jury that "an accomplice is one who is concerned in the commission of a crime or connected with the crime committed, either as principal offender or as one who advises, aids, or assists in the commission of the unlawful act, and that the witness Roy Hartman having testified that he was associated with the defendant in the commission of the crime charged in the information, is an accomplice within the meaning of the law." No exception was taken or assignment made to this instruction. At defendant's request, the court further in-

structed the jury "that under the evidence in this case you are to decide as a question of fact whether or not the witness Dee Werz was an accomplice, and if you find from the evidence in this case that said Werz was not in fact an accomplice, then you are instructed to return a verdict of not guilty." This instruction was as favorable to the defendant as he was entitled to under the evidence and the definition of accomplice as given by the court. We do not see how the court could have held, as a matter of law from this evidence —and we have quoted all of it bearing on the subject—that Werz was an accomplice in the crime of burglary in the sense that he might have been charged as a principal in that crime. The only shred of evidence tending to connect him with the offense before it was committed is that of Hartman to the effect that "The subject was brought up at a time prior to that, that in case that we got anything we could leave it in his house." While Werz did not specifically deny that, he did testify that he had no knowledge of what was in the boxes and made no inquiry.

As may be seen from the testimony, there is no evidence from which it could be inferred that Werz actually knew that the Western Arms store was to be burglarized or that he aided or abetted in the perpetration of that burglary. The most that could be said for the evidence is that in a general way he gave consent to the storing of "anything there" without knowledge of any particular crime being planned either by him or the other men. This was not sufficient for the court to hold as a matter of law that he was an accomplice. At defendant's request that matter was submitted to the jury, and while there may be some doubt whether the court should not have decided that Werz was not an accomplice, yet the instruction submitting it to the jury was as favorable to the defendant's contention as could be allowed.

It is contended that Werz nevertheless is within the accomplice rule because under the decision of this court in *State* v. *Coroles,* 74 Utah 94, 277 P. 203, 204, he and the

other men are accomplices in the receiving of stolen property, and that in any event he was implicated in the crime as an accessory after the fact. Assuming, without deciding, that this witness was an accessory or could be convicted as a receiver of stolen property, how stands the case? In this State the distinction between a principal and accessory before the fact is abolished. Section 105-21-24, R. S. 1933. Principals are defined in section 103-1-43, R. S. 1933, as follows:

"All persons concerned in the commission of a crime, either felony or misdemeanor, whether they directly commit the act constituting the offense or aid and abet in its commission or, not being present, have advised and encouraged its commission."

The receiving of stolen property is a distinct crime. Section 103-36-12, R. S. 1933. So also is that of accessory, which is defined as follows by section 103-1-44:

"All persons who, after full knowledge that a felony has been committed, conceal it from a magistrate, or harbor and protect the person who committed it, are accessories."

In *State* v. *Coroles*, supra, the court held that the thief who delivered the stolen goods to the defendant was an accomplice in the crime of receiving stolen property under our statute. It may seem inconsistent to say he was a receiver of stolen property, he having stolen it and delivered it to defendant, but under our statute making principals all those concerned in the commission of a crime or who aid and abet in its commission, he was a principal in the crime of receiving stolen property. In the same case, however, we referred to a former Utah decision in the case of *People* v. *Chadwick*, 7 Utah 134, 25 P. 737, 738, and said, "That an accessory after the fact is not an accomplice has been decided by this court." An accomplice is a competent witness and, in the absence of a statute regulating the matter, it would be left to the jury to evaluate his testimony in the light of such relationship. The court would caution the

jury as to the need of corroboration of some substantial part of such testimony. 4 Wigmore on Evid. 350, § 2056. In this State the statute has provided a rule of law which requires an accomplice to be corroborated—not generally as to any of his testimony, but specifically by evidence which tends to connect the defendant with the commission of the crime. We are not inclined to extend the rule beyond the wording of the statute and the decisions of this court. In *State* v. *Coroles*, supra, the thief testifying as a witness was an accomplice with the defendant, not because he was the thief, but because he aided and abetted the defendant in the perpetration of the crime with which the defendant was charged. In *People* v. *Chadwick*, supra, a case decided before statehood construing statutes the same as those quoted above, it was said:

"This being the case, the most that defendants could claim, and what the defendants claim in their brief, is that Green was an accessory after the fact. If he was an accessory after the fact, under section 4391, Comp. Laws 1888, he could not have been an accomplice, under section 4390. Our statute makes a clear distinction between the two offenses. As an accessory after the fact, he could not be indicted jointly with the principal defendant, nor tried with him, but, if tried at all, he must be tried separately, under sections 4391, 4949, Comp. Laws 1888. *Com.* v. *Wood*, 11 Gray [(Mass.) 85] 93; *Com.* v. *Boynton*, 116 Mass. [343] 345; *Com.* v. *Drake*, 124 Mass. [21] 24; *U. S.* v. *Kershaw*, 5 Utah 618, 19 P. 194. If he was an accessory after the fact, he could not become a partaker of the guilt, as there would be no union of criminal intent and act. 1 Bish. Crim. Law (3d Ed.) § 692. * * *

"A person is an accessory after the fact only after he has full knowledge that a felony has been committed, and then conceals that knowledge from a magistrate, or harbors and protects the person charged or connected therewith. Comp. Laws 1888, § 4391. If, then, Green was not a principal or accomplice in this crime, under section 4390, it was not necessary that his testimony should have been corroborated, under section 5049, in order to give it such weight as would ordinarily attach to it. Nor do we think it was the intention of the legislature to require the testimony of an accessory after the fact to be corroborated, under the provisions of section 5049, before his testimony could be credited without corroboration."

In 16 C. J. 675 it is said,

"Where a statute abrogates the difference between an accessory before the fact and the principal, it by implication preserves the distinction between accessories before and after the fact, and according to the decisions last referred to the accessory after the fact is not an accomplice."

In this State we have no statutory definition of an accomplice, but the court has construed the word to refer to one who is or could be charged as a principal with the defendant on trial. *State* v. *Coroles,* supra; *State* v. *Cragun,* 85 Utah 149, 38 P. (2d) 1071. 16 C. J. 673 states,

"One who could not be convicted of the crime with which defendant is charged is not an accomplice, no matter how culpable his conduct in connection therewith may be."

An accomplice whose testimony needs corroboration under the statute is one who is culpably implicated in the commission of the crime of which the defendant is accused. *Blake* v. *State,* 55 Okl. Cr. 34, 24 P. (2d) 362; *Yeargain* v. *State,* 57 Okl. Cr. 136, 45 P. (2d) 1113. See, also, *State* v. *Merrell* (Mo. Sup.) 263 S. W. 118; *State* v. *McComas,* 85 Mont. 428, 278 P. 993; *McKenzie* v. *Commonwealth,* 221 Ky. 276, 298 S. W. 693. Here, Werz was not, as found by the jury, culpably implicated with the other men in the crime of burglary and was not an accomplice. An accessory after the fact is not an accomplice, and neither is one who might be charged or convicted of some other crime not the crime for which the defendant was on trial.

Finding no error in the record, the judgment of the trial court is affirmed.

EPHRAIM HANSON, MOFFAT, WOLFE, and LARSON, JJ., concur.