447 P.2d 908

STATE of Utah, Plaintiff and Respondent,

v.

Sylvester SCOTT, Defendant and Appellant.

No. 10876.

Supreme Court of Utah.

Dec. 4, 1968.

Jimi Mitsunaga, Jay V. Barney, Salt Lake City, Legal Defender Assn., for defendant and appellant.

Phil L. Hansen, Atty. Gen., C. Van Drunen, Chief Deputy Atty. Gen., Salt Lake City, for plaintiff and respondent.

ELLETT, Justice:

The appellant was convicted of the crime of burglary in the second degree and was sentenced to serve a term in the Utah State

Prison. He appeals to this court and makes two assignments of error, viz.: (a) The chief witness for the State was not competent to testify; and (b) the trial court failed to instruct the jury on the law of accomplices.

The witness in question testified that the appellant and another tried to get him to go to a furniture store late at night and haul some furniture for them. He declined to do so but later drove out by the store and parked nearby. He says he recognized the parties and saw them remove a television set and a coffee table from the store and put the articles in an automobile and then drive away.

Later he gave the police information which led to the recovery of one of the television sets which had been stolen from the furniture store. He denied any complicity with the crime. However, the woman in whose house the television set was found testified that she had bought it from the witness. That woman was a friend of the appellant and may have been his wife at the time of trial. The evidence was not clear about that matter.

As to the claim of failure to instruct the jury, we do not think the evidence would justify a finding that the witness in question was an accomplice. He may have been guilty of receiving stolen property knowing it to have been stolen, and he may have been guilty of being an accessory after

the fact. However, neither of these crimes, if committed by him, would cause him to be an accomplice so that his testimony would need to be corroborated in order to sustain a conviction. See People v. Chadwick, 7 Utah 134, 25 P. 737 (1891); State v. Bowman, 92 Utah 540, 70 P.2d 458, 111 A.L.R. 1393 (1937).

The appellant raises the issue of the failure to instruct on the law of an accomplice for the first time in his brief. He made no request of the trial court for such an instruction, nor did he take any exception to the failure of the court to so instruct. Even if the evidence had warranted such an instruction, it does not seem proper that he could abide the return of a possibly favorable verdict at the hands of the jury and at the same time retain an "ace in the hole" to cause this court to give him a new trial in the case of an adverse decision. See State v. Blea, 20 Utah 2d 133, 434 P.2d 446 (1967); State v. Owens, 15 Utah 2d 123, 388 P.2d 797 (1964); State v. Dubois, 98 Utah 234, 98 P.2d 354 (1940). While this is the general rule, there may be exceptional circumstances when errors not excepted to are so clearly erroneous and prejudicial to the fundamental rights of a defendant that an appellate court will of its own accord take notice thereof. State v. Cobo, 90 Utah 89, 60 P.2d 952 (1936). In the instant case there are no exceptional circumstances which

would require us to depart from the general rule.

The claim of incompetency on the part of the witness to testify stems from a commitment of the witness to the state mental hospital several years prior. The witness was then charged with grand larceny. He entered a plea of not guilty by reason of insanity, and the judge ordered him to be sent to the Utah State Hospital for a period of 30 days for observation and in order for psychological, psychiatric, and neurological studies to be conducted on him.

A letter from the senior psychiatrist of the Utah State Hospital was received in evidence at the insanity hearing and the matter submitted to the court without any other evidence being offered. That letter is as follows:

This is in reply to your telephone call today requesting the types of studies done with the results which led to our diagnosis and conclusions in Mr. Griffing's case.

First, he was given the usual standard form of psychiatric questioning, observation, and evaluation. Next, he was given psychological testing which consisted of Bender Gestalt, Wechsler Belle-View, and Projective Drawing tests, which corroborated our clinical impression of organic brain damage along with a neurotic process of hysterical proportions.

This was followed by a neurological examination conducted by Madison Thomas, M.D. of Salt Lake City, in which he likewise concurred with our impressions. Adjunctive studies of a physical and neurological nature consisted of the following: x-ray of the skull which revealed multiple fractures, an electroencephalogram which was reported as a 9–10 per second EEG with slightly abnormal lateralization of 3–5 per second slowing in the left pre-temporal area, and a study of the spinal fluid with normal results. It should be pointed out that the latter mentioned finding is consistent with the fact that the original head injury necessitating removal of multiple subdural hematomas occurred approximately six months ago. A more extensive study called a pneumoencephalography was performed being reported as normal, but this is non-conclusive since in most cases there is no evidence of brain damage demonstrated by this process up until and even after a year from the time the injury has occurred.

Based on the evidence before the court the witness (defendant in that case) was on November 1, 1962, committed to the Utah State Hospital for an indeterminate period of time.

Section 77–48–5, U.C.A.1953, provides in substance that when an accused is determined to be insane, the judge shall order

him committed to the state hospital until he becomes sane and that all criminal proceedings against him are to be suspended if the court deems the same to be in the furtherance of justice. It further provides that upon the accused becoming sane, he shall be returned to the custody from which he was taken, and all proceedings suspended upon commitment are to be resumed.

The record is not too clear as to what happened to the witness (defendant in that matter). However, on November 30, 1965, he was in court with his counsel and entered a plea of guilty to the included offense of petit larceny. We must presume that the proceedings in the court were conducted according to law and, if so, the witness would have been sane at that time.

The appellant here relies on the provisions of Section 78-24-2, U.C.A.1953, which reads:

> Who may not be witnesses. The following persons cannot be witnesses:
>
> (1) Those who are of unsound mind at the time of their production for examination.

\* \* \* \* \* \*

In the instant case, when the witness was called to testify, the appellant objected to his competency as a witness. The court asked some preliminary questions of the witness, and from the answers received he determined that the witness was competent to testify, and overruled the objections made. A reading of the testimony of the witness clearly shows that he was competent. Whether or not he was truthful was for the jury to determine.

The competency of any given witness is a matter for determination by the trial court, and his determination in that matter should be interfered with only when he has clearly abused his discretion.

Section 78-24-1, U.C.A.1953, reads:

> Who may be witnesses—Jury to judge credibility. All persons, without exception, otherwise than as specified in this chapter, who, having organs of sense, can perceive, and, perceiving, can make known their perceptions to others, may be witnesses. \* \* \*

The jury having heard all of the testimony in the case believed the witness. The appellant has had a fair trial and was convicted on competent evidence. His assignments of error are without merit. The judgment of the trial court is affirmed.

CROCKETT, C. J., and CALLISTER, TUCKETT and HENRIOD, JJ., concur.