STATE of Utah, Plaintiff and
Respondent,

v.

Bryan BRECKENRIDGE, Defendant
and Appellant.

No. 18805.

Supreme Court of Utah.

June 1, 1983.

Petition for Rehearing Aug. 24, 1984.

Anthony M. Thurber, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Michael J. Christensen, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

DURHAM, Justice:

The defendant appeals from a denial of his motion to set aside his plea of guilty to a charge of arson. The dispositive question is whether a conviction based on a plea may stand where there is no record of facts showing that the charged crime was actually committed by the defendant, or that the defendant has for some other legitimate reason intelligently and voluntarily entered such a plea. *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). We reverse.

Before noon on July 2, 1982, Bryan Breckenridge was at his job at the Larson Ford body shop, working with a cutting torch on a truck. Some old parts had been accumulating in the shop for over a year. Breckenridge decided to dispose of them by igniting them with a paint gun and a cutting torch. The fire apparently spread out of control. Breckenridge attempted to extinguish it, was unsuccessful, and the fire spread to the roof, causing extensive damage to the building.

On September 1, 1982, Breckenridge was charged with aggravated arson. The information charged that Breckenridge "intentionally and unlawfully damaged the habitable structure of Larson Ford by means of fire." Following his arrest, he was taken to the Murray City fire station where he was questioned. While at the fire station, Breckenridge allegedly "confessed" to starting a fire. The following is an extract from the transcript of the interview held at the fire station, which was admitted into evidence as an exhibit in the hearing on Breckenridge's motion to set aside his plea:

> *Christensen* (Assistant Salt Lake County Attorney): Describe for me if you would what you were doing just prior to setting fire to the building? What you did in order to set fire to the building and what you used?
>
> *Breckenridge:* I kind of decided on the spur of the minute to try to get rid of the parts that were stacking up in the corner. So I thought that I would take my paint cup gun over there and start the fire by using a cutting torch and putting it out as soon as you know the (inaudible) with an extinguish [sic] and haul it all out to the garbage. Have it out of my hair and the fire got going and I couldn't get it out.
>
> *Christensen:* Did you pour any solutions of solvent around to set the fire intentionally?

> *Breckenridge:* No, just what was in the paint gun.
>
> *Christensen:* Actually poured it around on the floor?
>
> *Breckenridge:* There was a little bit around, most of it was in the gun still.
>
> *Christensen:* How did you set fire to the solvent?
>
> *Breckenridge:* Just a cutting torch spark.
>
> *Christensen:* Let that fall down into it somehow?
>
> *Breckenridge:* Well, I was cutting on the door and the sparks went across the floor, hit the paint gun and caused the fire.
>
> *Christensen:* And you attempted to put the fire out?
>
> *Breckenridge:* Yes, sir.
>
> *Christensen:* Where did you go to get an extinguisher?
>
> *Breckenridge:* About five feet away.
>
> *Christensen:* And when the fire got out of control, what did you say or do?
>
> *Breckenridge:* Uh, I hollared [sic] at Greg to call the fire department and I went running across to the service drive and hollared [sic] to the guys over there that the place was on fire and they ran to the cashier and told her to call the fire department and it went back and the whole shop was on fire.
>
> *Christensen: Had you intended to set fire to the whole shop?* [Emphasis added.]
>
> *Breckenridge: No, sir.* [Emphasis added.]

Nowhere does this "confession" describe anything more than the occurrence of an accident, or possibly a reckless burning.

Thereafter Breckenridge was charged with aggravated arson. On September 10,

1982, Breckenridge, as a result of a plea bargain agreement, and represented by a public defender, pled guilty to the lesser charge of arson, a third degree felony, in the Third Judicial District Court in Salt Lake County. Prior to accepting his guilty plea, the district court judge questioned Breckenridge on the voluntariness of his plea and whether he was in fact guilty of arson:

> *The court:* The state must prove the following elements before you could be found guilty of this offense—I should say guilty of this offense by the verdict of a jury. Those elements are as follows:
>
> That on or about July 2, 1984, in Salt Lake County, State of Utah, that you unlawfully and *intentionally damaged the building*, I presume it is Larson Ford, by means of a fire. [Emphasis added.]
>
> *The defendant:* Yes, sir.
>
> *The court:* Do you understand each and every one of those elements?
>
> *The defendant:* Yes, sir.
>
> *The court:* Do you understand that by entering a plea of guilty you admit each and every one of the elements?
>
> *The defendant:* Yes, sir.

As the trial judge explained it to Breckenridge, he was being charged with starting a fire with the intention of damaging the building at Larson Ford. Yet only moments later, upon further questioning by the trial judge, Breckenridge relates an account of events that constitutes an unintentional burning or accident rather than an intentional burning of a building or any other form of arson:

> *The court:* Are you, in fact, guilty of this offense?
>
> *The defendant:* Yes, sir.
>
> *The court:* Tell me what you did.
>
> *The defendant:* Well, I had some parts in the back of the shop that had been there about a year and I set fire to them to get rid of it, and I couldn't get the fire out and burned the roof off the building.

It is apparent that Breckenridge misunderstood the legal elements of arson and believed for some reason that his action in setting fire to the parts to get rid of them was criminal in nature.

On October 14, 1982, the date set for sentencing, Breckenridge appeared with new privately retained counsel. He moved to withdraw his guilty plea, offering in support of that request a stipulation, signed by Christensen, which agreed to withdrawal of the plea. After initially denying Breckenridge's motion, the court granted his request to put on supporting evidence. Breckenridge then testified that the fire was accidentally started when a spark from his cutting torch skipped onto some flammable materials. Breckenridge also claimed, and claims again on appeal, that he was improperly influenced to plead guilty. He bases his claim on allegations that he was threatened with stories of sexual and physical abuse that would occur should he be sent to prison, that the prosecutor promised to obtain a public defender and arrange bail for him in return for a guilty plea, that the prosecutor misrepresented to him the existence of an eyewitness,[1] and that the prosecutor failed to expose exculpatory evidence.

The district court denied appellant's motion to withdraw his guilty plea. The court

---

1. The record indicates that the prosecutor testified that a co-worker of Breckenridge's was available who would say Breckenridge made comments to him before the fire about his intent to set it. However, from the description of the witness's potential testimony by the prosecutor, it is entirely consistent with Breckenridge's original version of the facts, namely that he intended to get rid of the *parts* by burning, but not to burn the building. There is no indication that the prosecutor disclosed either that fact, or its legal significance, to Breckenridge.

sentenced Breckenridge to an indeterminate prison term not to exceed five years, fined him $2,500, and ordered him to make restitution. The court stayed execution of the prison term on the condition that Breckenridge serve sixty days in the county jail, pay the fine, and make restitution. The court stayed execution of the sentence pending this appeal.

■ On the suggestion of this Court, during oral argument on the appeal, Breckenridge addressed for the first time the argument that his right to due process was violated because his guilty plea was accepted by the court without his understanding the nature and elements of arson and without a showing that there was any factual basis upon which to base conviction of a crime. The general rule that constitutional issues not raised at trial cannot be raised on appeal is excepted to when a person's liberty is at stake. *Pratt v. City Council of City of Riverton*, Utah, 639 P.2d 172, 173–74 (1981). Here Breckenridge's felony conviction and sentence rest on the outcome of his appeal. We will therefore address the issue of the adequacy of his plea on this newly raised ground. We have recognized the importance of avoiding a guilty plea wrongly made because of ignorance. "The court has an undoubted duty to guard against the possibility that an accused who is innocent of the crime charged may be induced to plead guilty without sufficient understanding of the nature of the charge or the consequences of his plea ...." *State v. Harris*, Utah, 585 P.2d 450, 452

(1978). Furthermore, Utah R.Crim.P. 11(e)(4) specifically states that "[t]he court ... shall not accept ... a plea [of guilty] until the court has made the findings: ... (4) That the defendant understands the nature and elements of the offense to which he is entering the plea." No such finding was explicitly made in this case, and indeed could not have been correctly made based on the defendant's pre-trial statements to the prosecutor and to the court at the time the plea was entered.

■ On the basis of this record, we must conclude that Breckenridge did not understand the nature and elements of the crime to which he pled guilty. First, the record recites no factual basis from which we might conclude that an arson ever occurred. U.C.A., 1953, § 76–6–102 requires as an element of arson that a person *intentionally damage* property. Neither in Breckenridge's so-called "confession" nor in his relation of events to the trial court can we find any facts that show he intended to damage any property. The logical inference from what is in the record is that it was his job to dispose of old parts and that he believed burning them would be the easiest method. There would, therefore, have been no reason for Breckenridge to plead guilty to arson when arson had not been committed unless he mistakenly believed through a misapprehension of the nature and elements of the crime that he had committed it in being responsible, accidentally or deliberately, for the burning of the parts.[2] This inconsistency is amplified

---

2. Although such examples of misunderstanding may be relatively rare, they must be guarded against. "A person may well know what he has done but not be sufficiently skilled in law to recognize that his acts do not constitute the offense with which he is charged." Wright, Federal Practice and Procedure, Criminal 2d § 174 at 614 (1982) (footnote omitted).

It is undoubtedly true that the great majority of defendants who enter a plea of guilty are guilty either of the offense charged or of a more serious offense. However, the risk that a plea which is obtained without resort to threats or other improper inducements and

which is entered with full understanding of the possible consequences might nonetheless be inaccurate remains a matter of concern. The defendant may not completely understand what mental state and acts constitute commission of the offense charged, and it may be that his conduct is not as serious as that charged or that he has a valid defense to the charge .... These ... situations, though rare, have been observed from time to time.

ABA Standards for Criminal Justice, Pleas of Guilty, App.Dr. 1968, at 31, *quoted in Wright, supra*, § 174 at 614–15. Similarly, a defendant should not be allowed to plead guilty to a

by the trial judge's explanation to Breckenridge that he was being specifically charged with "intentionally burning a building." This more specific charge makes even more obvious the absence of any facts showing the crime. As already indicated, the judge failed to make any finding on the record that Breckenridge understood the nature and elements of arson, as required by Utah R.Crim.P. 11(e)(4), and we are convinced by the contents of the record that Breckenridge did not.

Concern for the legitimacy or truth of a guilty plea is an integral part of ascertaining the voluntariness of that plea. Utah R.Crim.P. 11(e)(2) requires the court to find that a guilty plea is voluntarily made before it accepts it. A guilty plea cannot be voluntary if it is uninformed. "[B]ecause a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969) (footnote omitted). In this case, the trial judge did make a finding that Breckenridge voluntarily pled guilty. However, in light of our conclusion that Breckenridge did not understand the nature and elements of the crime of arson, we must conclude that the finding was unsupported by the record.

Because Breckenridge's guilty plea was involuntarily made, we hold that the judgment of conviction was entered without due process of law in violation of Utah Const. art. I, § 7. The conviction must therefore be vacated and the plea set aside.

Reversed and remanded.

charge of mailing obscene material until the court has examined the material to determine that it is in fact obscene. *Clicque v. United States*, 514 F.2d 923, 927–28 (5th Cir.1975). Furthermore, if a guilty plea is based on a misapprehension of the "nature and elements" of the crime, there is always the possibility that the plea may have been the result of some improper promise or coercion, rather than of an

HALL, C.J., and CULLEN Y. CHRISTENSEN and RICHARD C. DAVIDSON, District Judges, concur.

HOWE, J., concurs in the result.

STEWART and ZIMMERMAN, J., do not participate herein.

informed choice. Although such a conclusion would be speculative, the ground for any such speculation could easily be removed by a record that eliminated any doubt that a guilty plea was not made in ignorance. The prosecutor's willingness to stipulate to the setting aside of the plea in this case suggests that he may have believed there to be some deficiency in its adequacy or fairness as well.