**STATE of Utah, Plaintiff and Appellee,**

v.

**Steven M. IRWIN, Defendant and Appellant.**

**No. 950385–CA.**

Court of Appeals of Utah.

Sept. 6, 1996.

Kent E. Snider, Ogden, for Defendant and Appellant.

Jan Graham and Kenneth A. Bronston, Salt Lake City, and Gary Heward, Ogden, for Plaintiff and Appellee.

Before ORME, BILLINGS and JACKSON, JJ.

## OPINION

ORME, Presiding Judge:

Claiming the prosecution breached the terms of his plea agreement, defendant appeals his convictions for forcible sexual abuse and unlawful sexual intercourse. We conclude the issue was not preserved for appeal and that "exceptional circumstances" do not exist so as to permit our consideration of the issue absent preservation. Accordingly, we affirm.

## FACTS

Defendant was charged with rape, a first-degree felony. At his original arraignment, he pled not guilty. During the course of investigation, new charges surfaced against defendant and defendant entered into plea negotiations with the State. Defendant agreed to plead guilty to a second-degree felony, forcible sexual assault, and a third-degree felony, unlawful sexual intercourse. The State, for its part, agreed not to file any other charges and to remain silent at the sentencing of defendant. However, it was

agreed that the prosecutor could provide input to Adult Probation and Parole (AP & P) in the course of its preparing a presentence report.

At initial sentencing, the prosecutor, claiming she was never contacted by AP & P, addressed the court regarding defendant's sentence. She told the court that the presentence report failed to address the unlawful sexual intercourse offense, that the police reports showed defendant lied to police about this and other cases, and that the victim had dropped out of school as a result of defendant's offenses. Defense counsel did not object. At this first sentencing hearing, the court ordered defendant to submit to a ninety-day diagnostic evaluation at the prison. Final sentencing was rescheduled.

At the hearing following the diagnostic evaluation, a substitute prosecutor was present and made a recommendation to the court during sentencing. He recommended that the court follow the diagnostic report and sentence defendant to prison. Again, defense counsel made no objection to the prosecutor's comments. The trial court then sentenced defendant to 1–15 years for forcible sexual abuse and 0–5 years for unlawful sexual intercourse, the terms to be served concurrently.

## APPELLATE REVIEW OF ISSUE NOT RAISED BELOW

Defendant, through new counsel on appeal, argues we should address the issue of the breach of his plea agreement even though no objection to the prosecutor's remarks was made at either sentencing hearing. Defendant contends that "exceptional circumstances" exist because the thirty-day time limit for filing a motion to withdraw his guilty plea under Utah Code Ann. § 77–13–6(2)(b) (1995) had elapsed before the prosecution breached its promise to remain silent at sentencing.[1]

It is a well-established rule that a defendant who fails to bring an issue before the trial court is generally barred from raising it for the first time on appeal.[2] *State v. Lopez*, 886 P.2d 1105, 1113 (Utah 1994); *State v. Archambeau*, 820 P.2d 920, 922 (Utah App.1991). However, three exceptions to this general rule are recognized in Utah. An appellate court may address an issue for the first time on appeal if appellant establishes that the trial court committed "plain error," *State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993); *Archambeau*, 820 P.2d at 922; if there are "exceptional circumstances," *id.*; or in some situations, if a claim of ineffective assistance of counsel is raised on appeal even though, by reason of the claimed ineffectiveness, the matter was not raised below. *See State v. Humphries*, 818 P.2d 1027, 1029 (Utah 1991).

Defendant does not raise a claim of ineffective assistance of counsel in this appeal. In order to obtain appellate relief through the doctrine of "plain error," an appellant must establish that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful." *Dunn*, 850 P.2d at 1208. If appel-

1. Defendant fails to explain why his inability to file a timely motion to withdraw his guilty plea bears materially on our analysis. It is as if he assumes the worst, namely, that the trial court would have overruled the objection to the State's speaking at the sentencing hearings and that he then would have been left without a remedy because the time to withdraw his guilty plea would have expired. In so arguing, defendant misperceives the important policy underlying the general rule, which is that the trial court's attention should be called to potential error so that it may attend to it expeditiously and effectively, correcting any problems and obviating the need for appellate or collateral proceedings. *See, e.g., State v. Johnson*, 821 P.2d 1150, 1161 (Utah 1991); *State v. Sanchez*, 11 Utah 2d 429, 430, 361 P.2d 174, 175 (1961). We have no reason to doubt that if the objection had been timely interposed, i.e., as the prosecutor rose to address the court, the trial court would have enjoined the prosecution from any comment, thereby obviating the problem of which defendant now complains.

2. Indeed, this concept is so important that it has recently been incorporated into the briefing requirements of the Utah Rules of Appellate Procedure. Rule 24 provides that each issue presented for review in an appellant's brief must cite to the record, showing that the issue was preserved in the trial court or, if it was not preserved, then appellant must set forth the grounds permitting appellate review. *See* Utah R.App.P. 24(a)(5)(A) & (B).

lant fails to prove one of these requirements, plain error is not established. *Id.* at 1209. In this case, while defendant raises "plain error" in passing, that doctrine is not the thrust of his argument. Rather, he focuses all but exclusively on "exceptional circumstances" and fails to establish the last two requirements of the "plain error" doctrine. Thus, we turn our attention to consider whether exceptional circumstances are present.

■ The exceptional circumstances concept serves as a "safety device," to assure that "manifest injustice does not result from the failure to consider an issue on appeal." *Archambeau,* 820 P.2d at 923. Unlike "plain error," "exceptional circumstances" is not so much a precise doctrine, which may be analyzed in terms of fixed elements, as it is a descriptive term used to memorialize an appellate court's judgment that even though an issue was not raised below and even though the plain error doctrine does not apply, unique procedural circumstances nonetheless permit consideration of the merits of the issue on appeal.[3]

The concept of exceptional circumstances is an elusive one. *See, e.g., Dunn,* 850 P.2d at 1209 n. 3 (referring to "exceptional circumstances exception" as "ill-defined"). The cases employing the concept feature circumstances which may be fairly characterized as exceptional, but not in every case with some peculiar twist will appellate courts invoke the "exceptional circumstances" label and reach an issue otherwise impervious to appellate review. It does not follow, however, that the determination is completely unpredictable or, as defendant seems to assume, that the concept is so imprecise that "exceptional circum-

stances" can only be said to exist when an appellate court, more or less arbitrarily, says they do. While something of a qualitative judgment must ultimately be made by the appellate court, careful review of the cases which have employed the exceptional circumstances concept illustrate its proper use and inform our decision as to whether it properly may be invoked in this case.

## REVIEW OF "EXCEPTIONAL CIRCUMSTANCES" CASES

In *In re Woodward,* 14 Utah 2d 336, 384 P.2d 110 (1963), the Utah Supreme Court held that statutes granting general supervision and control over the juvenile courts to an executive branch agency and sanctioning the removal of judges by that same agency were unconstitutional because they violated the separation of powers doctrine. 384 P.2d at 113. While this issue was not raised at the trial level, the Court, in a footnote, justified addressing the issue on appeal, finding exceptional circumstances, although not using that term. *Id.* 384 P.2d at 111–12 n. 2. While noting that there was "authority for raising a constitutional issue for the first time on appeal" if appellant's liberty were at stake, the *Woodward* court rejected the proposition that the case before it implicated a liberty interest. *Id.* The Court nonetheless considered the merits of the underlying issue—the constitutionality of the statute—primarily because the usual trappings of the adversary process, like participation by legal counsel, were not necessarily present in juvenile court proceedings in those days. *Id.*

In *State v. Breckenridge,* 688 P.2d 440 (Utah 1983), defendant had agreed to a plea

---

3. Some confusion exists in the case law because of the former penchant of the Utah Supreme Court to convey that the general rule requiring timely preservation infrequently gives way to the plain error doctrine by characterizing the doctrine as applying only in "exceptional circumstances." *See, e.g., State v. Larocco,* 665 P.2d 1272, 1273 n. 4 (Utah 1983) (per curiam) ("For the exceptional circumstances where this Court will correct error in the absence of objection, *see State v. Cobo,* 90 Utah 89, 60 P.2d 952 (1936)." *Cobo* is an early plain error case.); *State v. Scott,* 22 Utah 2d 27, 28, 447 P.2d 908, 910 (1968) ("[T]here may be exceptional circumstances

when errors not excepted to are so clearly erroneous and prejudicial to the fundamental rights of a defendant that an appellate court will of its own accord take notice thereof."). Thus, the phrase "exceptional circumstances" is used in two different ways in Utah case law dealing with issues not properly preserved for appeal—first, to refer to the fact that plain error is itself an infrequently used exception to the general rule and, second, to refer to the conceptually distinct circumstances in which errors not objected to, even though not qualifying as "plain error," will nonetheless be dealt with on appeal.

bargain under which he pled guilty to arson. *Id.* at 441–42. Although there was no objection to this plea bargain or a motion to withdraw plea, on appeal defendant claimed that he had been improperly influenced to plead guilty. *Id.* at 442. In its opinion, the Supreme Court stated: "The general rule that constitutional issues not raised at trial cannot be raised on appeal is excepted to when a person's liberty is at stake." *Id.* at 443. It reached the merits of defendant's claim and held that his Due Process rights were violated. *See id.* at 444. Notwithstanding the *Breckenridge* court's summary reference to "liberty," it has been noted that the peculiar circumstances leading to Breckenridge's "conviction for accidentally starting a fire certainly qualify as 'exceptional circumstances.'" *Archambeau,* 820 P.2d at 924 n. 8.

In *State v. Jameson,* 800 P.2d 798 (Utah 1990), the Supreme Court permitted defendant to raise an issue of double jeopardy for the first time on appeal because "defendant's liberty [was] at stake," *id.* at 802–03, in the apparent absence of any procedural circumstances that could be regarded as "exceptional." However, this court later expressly rejected the notion that implication of a "liberty interest" is a self-standing exception to the general rule or that it automatically equates to an exceptional circumstance. *See State v. Archambeau,* 820 P.2d 920, 925 (Utah App.1991). This court held that "a defendant may not assert [even] a constitutional issue for the first time on appeal unless he can demonstrate 'plain error' or 'exceptional circumstances.'" *Id.* Moreover, this court concluded that the fact that a "liberty interest" is at stake is just one factor in determining whether "exceptional circumstances" exist. *Id.* Writing for a unanimous panel, Judge Billings correctly observed that

> [i]n a criminal case . . . it is almost always true that the defendant's "conviction and sentence rest on the outcome of his [or her] appeal," *Breckenridge,* 688 P.2d at 443, and, therefore, his or her "liberty" is at stake. A per se "liberty interest" ex-

ception to the rule prohibiting the consideration of issues for the first time on appeal would effectively swallow the general rule in criminal appeals.

*Id.* The Utah Supreme Court has expressly approved the analysis set forth in *Archambeau.*[4] *See State v. Lopez,* 886 P.2d 1105, 1113 (Utah 1994).

In *State v. Gibbons,* 740 P.2d 1309 (Utah 1987), the Supreme Court used the exceptional circumstances rationale to reach an issue not properly preserved for appeal even though the circumstances in question seem much less exceptional than later cases employing the concept. In *Gibbons,* defendant pled guilty to two counts of sexual abuse of a child and one count of sodomy on a child. *Id.* at 1310–11. Without first moving to set aside the guilty plea, defendant appealed, claiming the plea was not voluntary. *Id.* at 1311. The Court found that "unusual" circumstances existed and reached the merits of the appeal. *Id. See State v. Gibbons,* 779 P.2d 1133, 1134 (Utah 1989) (describing Court's holding in 1987 *Gibbons* case).

The 1987 *Gibbons* court was concerned with a number of procedural matters, including a change in defense counsel during the appeal. 740 P.2d at 1311. Additionally, the Court reasoned that because at the time there was no time limit in which to file a motion to withdraw the guilty pleas, if such a motion were made and was successful, it would render the pending appeal moot. *Id.* However, if the motion were unsuccessful, an appeal could then be taken from the denial of that motion, which the Court feared would result in two appeals. *Id.* The articulated concern of the Court seems to have been that two appeals from two different judgments in the same criminal case could result. *Id.*

If this was the Court's true concern, considerations of mere judicial economy would be regarded as a valid exceptional circumstance, but subsequent case law suggests otherwise. *See, e.g., State v. Labrum,* 881 P.2d 900, 904 (Utah App.1994) (explicitly rejecting considerations of judicial economy as adequate to trigger exceptional circumstances doctrine), *rev'd on other grounds,* 925

---

4. The opinion in *Archambeau* contains an excellent discussion of the rise and fall of the "liberty interest" notion in the context of "exceptional circumstances." *See* 820 P.2d at 922–26.

P.2d 937 (Utah 1996). The perceived need to particularize the procedure necessary to insure the voluntariness of guilty pleas in the face of inconsistent trial court practices may be the real, albeit unspoken, reason why the Court reached the merits of the appeal. *Cf. Woodward,* 384 P.2d at 111 n. 2. (noting "considerable public interest and concern engendered" as secondary reason to reach merits).

■ Circumstances much more exceptional than those at issue in *Gibbons* were presented in *State v. Haston,* 846 P.2d 1276 (Utah 1993) (per curiam), *rev'g State v. Haston,* 811 P.2d 929 (Utah App.1991). In *Haston,* defendant challenged his conviction for attempted second degree murder because the jury was allowed to consider depraved indifference as a culpable state of mind for that offense. 846 P.2d at 1277. Defendant had not raised that issue at trial. *Id.* Meanwhile, in a case decided after Haston's trial, the Utah Supreme Court held that Utah does not recognize the crime of *attempted* depraved indifference homicide. *State v. Vigil,* 842 P.2d 843, 848 (Utah 1992). Even though the defendant in *Haston* did not properly raise the issue below, the Court determined that it would be "manifestly unjust"[5] to leave him incarcerated for something that is not recognized as a crime in Utah. 846 P.2d at 1277.

As in *Haston,* our Supreme Court in *State v. Lopez,* 873 P.2d 1127 (Utah 1994), *rev'g State v. Lopez,* 831 P.2d 1040 (Utah App. 1992), employed the "exceptional circumstances" rubric where a change in law or the settled interpretation of law colored the failure to have raised an issue at trial. In *Lopez,* defendant was stopped for driving without a license. 873 P.2d at 1130. Once defendant was arrested on three outstanding warrants, the police discovered several bags of cocaine during an inventory search of his vehicle. *Id.* The trial court granted defendant's motion to suppress the cocaine based

on the ground that he had been stopped on a pretext, and the State petitioned for interlocutory review. *Id.* at 1129. This court granted the petition and applied the pretext-stop doctrine in rendering its decision, declining "the State's invitation to abandon the pretext stop doctrine." *Id.*

When the case finally reached the Utah Supreme Court, defendant argued for the first time that the Court should find the pretext stop doctrine to be rooted in provisions of the Utah Constitution even if it held the Fourth Amendment did not require such a doctrine. *Id.* at 1134 n. 2. However, in prior proceedings, defendant had premised his arguments solely on the Fourth Amendment, never mentioning separate state constitutional analysis. *Id.* The Court found exceptional circumstances existed and addressed the state constitutional issue because, at the time of the suppression hearing, the pretext doctrine "was the controlling rule of Fourth Amendment law as interpreted by the court of appeals." *Id.* Therefore, until he found himself before the Supreme Court with the Fourth Amendment underpinnings of the pretext doctrine unexpectedly under attack, defendant had had no particular need to invoke the state constitution.

More recently, the exception was used in another situation where there would have been no ready opportunity for appellate review if not for the exceptional circumstances concept. In *Salt Lake City v. Ohms,* 881 P.2d 844 (Utah 1994), defendant was arrested for creating a public disturbance and gave false identification to the arresting officers. *Id.* at 846. He waived his right to a trial before a judge of the circuit court and was tried by a circuit court commissioner, who entered judgment against him. *Id.* On appeal, defendant challenged the authority of a court commissioner to enter a final judgment, claiming that delegation of ultimate judicial authority to a commissioner violated Article VIII of the Utah Constitution. *Id.* The Supreme Court found that exceptional

---

5. One other source of confusion in this area merits mention. It should be noted that the term "manifest injustice" is often used in conjunction with the exceptional circumstances concept. *See, e.g., Haston,* 846 P.2d at 1277; *Archambeau,* 820 P.2d at 923. This can be misleading. Under Utah R.Crim.P. 19(c), a court may review an error in jury instructions, even if such instruction was not objected to at trial, to avoid "manifest injustice." Manifest injustice under Rule 19(c), however, is determined using the plain error standard. *State v. Verde,* 770 P.2d 116, 121–22 (Utah 1989). *Accord State v. Arguelles,* 921 P.2d 439 (Utah 1996).

circumstances existed because "the only way" to challenge the commissioner's authority was to first consent to that authority, through waiver, effectively agreeing not to object to that authority at trial, and then to obtain judicial consideration of the constitutionality of the commissioner's authority for the first time on appeal. *Id.* at 847.

 As the foregoing survey demonstrates, the "exceptional circumstances" concept has been reigned in considerably in the last few years. Its application has become much more predictable.[6] The fact that liberty is at stake, as defendant's is in the instant case, is no longer a sufficient basis for deviating from the general rule. *See Lopez,* 886 P.2d at 1113; *Archambeau,* 820 P.2d at 925. Considerations of judicial economy are not enough to justify invocation of the exceptional circumstances concept as a basis for reaching issues not properly preserved for appeal, *see Labrum,* 881 P.2d at 904, although it remains possible that matters of extraordinary importance or widespread interest might be. *See Gibbons,* 740 P.2d at 1311–13; *Woodward,* 384 P.2d at 111 n. 2. With the possible exception of an aberration or two, "exceptional circumstances" is a concept that is used sparingly, properly reserved for truly exceptional situations, for cases—as our Supreme Court has recently recognized—involving "rare procedural anomalies." *State v. Dunn,* 850 P.2d 1201, 1209 n. 3 (Utah 1993).

## APPLICABILITY OF THE EXCEPTIONAL CIRCUMSTANCES CONCEPT TO THIS CASE

 In order to find "exceptional circumstances," the weight of recent authority, typified by cases such as *Haston, Lopez,* and *Ohms,* requires something much more exceptional than mere oversight by trial counsel in failing to object to improper remarks made by a prosecutor. *Cf. State v. Olsen,* 860 P.2d 332, 333 & n. 1 (Utah 1993) (no exceptional circumstances found in case where defense counsel failed to object to trial court's not dismissing juror for cause). It may well be that the facts of the instant case would give rise to an ineffective assistance of counsel claim, but no such claim has been raised in this appeal.

To permit the use of the exceptional circumstances concept here, we would have to employ it in every case where there might have been ineffective assistance at trial which is not raised on appeal. Or stated another way, we would be sanctioning use of the exceptional circumstances concept as a way to address problems caused by ineffective assistance of counsel, but without requiring appellant to prove up such a claim on appeal in accordance with his or her burden under the Sixth Amendment, as elucidated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and its progeny. This would represent a quantum leap in the recently settled jurisprudence of the exceptional circumstances concept and be tantamount to ignoring the Utah Supreme Court's stated preference that it be invoked only when we confront "rare procedural anomalies." *Dunn,* 850 P.2d at 1209 n. 3. This is simply not such a case.

## CONCLUSION

Trial counsel's failure to object to the prosecution's apparently improper remarks at

---

**6.** It is also instructive to consider recent cases where the exceptional circumstances concept has been held inapplicable in a wide variety of contexts. In one case, the Utah Supreme Court analyzed specific special circumstances and held them insufficient. *See State v. Dunn,* 850 P.2d 1201, 1216 n. 11 (Utah 1993) (recognizing that case is "unusual in the sense that we reinstated it after finding that Dunn may have received ineffective assistance of counsel during his first appeal ... and that we are relying on a reconstructed record," but holding case does not present sufficiently exceptional circumstances to warrant reaching state constitutional claim for first time on appeal). In other cases, Utah appellate courts have declined to reach a variety of issues, stating, without elaboration, that "exceptional circumstances" did not exist. *See State v. Mabe,* 864 P.2d 890, 892–93 n. 6 (Utah 1993) (*Miranda* issue); *State v. Olsen,* 860 P.2d 332, 333–34 n. 1 (Utah 1993) (dismissal of juror for cause); *State v. Allen,* 839 P.2d 291, 302 (Utah 1992) (adequacy of findings of fact and conclusions of law regarding voluntariness of confession); *State v. Streeter,* 900 P.2d 1097, 1103 n. 9 (Utah App.1995) (*Miranda* issue), *cert. denied,* 913 P.2d 749 (Utah 1996); *State v. Jaeger,* 896 P.2d 42, 45 (Utah·App.1995) (incorrect bindover standard); *State v. Price,* 827 P.2d 247, 248 n. 2 (Utah App.1992) (illegal detention issue); *State v. Buford,* 820 P.2d 1381, 1384 (Utah App.1991) (state constitutional issue).

sentencing, even in conjunction with the expiration of the time within which to make a timely motion to withdraw plea, is by no means a substantial enough procedural anomaly to invoke the exceptional circumstances concept. Ineffective assistance of counsel was not raised and "plain error" has not been demonstrated. Accordingly, we decline to reach the merits of defendant's claim because it was not preserved for appeal. Affirmed.

BILLINGS and JACKSON, JJ., concur.