Decision
PER CURIAM:
{1 D.D. (Father) appeals the termination of his parental rights. The only issues on appeal are whether the juvenile court erred by not ordering reunification services for Father, who was incarcerated, or by not making findings that offering services would be detrimental to the child. See generally In re A.T., 2013 UT App 184, ¶ 15, 307 P.3d 672.
1 2 Z.M. was removed from the custody of S.M. (Mother) on August 29, 2012, at which time Father was incarcerated. Father was present with counsel at the September 4, 2012 shelter hearing, at which both parents admitted the allegations of the amended verified petition. In the resulting September 17, 2012 adjudication order, the juvenile court ordered services for Mother but did not address services for Father. Father did not attend the hearing held on October 4, 2012. The minutes from that hearing state that he was not transported. The court set the primary goal for Z.M. as reunification with Mother. Father was not present at an October 11, 2012 hearing, but he was represented by counsel. The October 22, 2012 order from that hearing states, "It was reported that the father remains incarcerated and he has again refused to be transported. This is the see-ond time the father has refused to be transported in order to attend a hearing in this matter." The October 22, 2012 order concluded,
2. Due to father's refusal to take part in these proceedings, the child shall not be returned to his custody at any time in the future until the father has appeared before this court.
3. No reunification services shall be provided to the father until such time as he appears before this court.
Father did not seek reunification services or object when services were not provided to him based upon his failure to appear in the juvenile court and participate in the child welfare case.
¶ 3 Father refused to be transported for a disposition hearing held on November 15, 2012, and his appointed counsel was "released from his appointment as legal counsel for the father who refuses to come to court." Father also was not present at the January 17, 2018 hearing when Z.M.'s permanency goal was changed to adoption. Despite his prior "release," Father's counsel was present and was reappointed. Father appeared at the February 21, 2013 pretrial hearing on the petition for termination of parental rights, indicating that he would like to contest the petition and that he disagreed with the foster placement of Z.M. Father was present and represented at the termination trial.
14 Father does not challenge any of the juvenile court's findings of fact supporting termination of his parental rights. Father's only challenge on appeal is based upon In re A.T., 2013 UT App 184, 307 P.3d 672, which was issued one month after the termination order being appealed. Father concedes that he did not preserve the issues for appeal, but he argues that In re A.T. announces a "new interpretation" of the statute and therefore its issuance after the decision in this case is an exceptional cireumstance that allows us to consider the merits of his appeal. See State v. Irwin, 924 P.2d 5, 10 (Utah Ct.App.1996) (stating that exceptional cireumstances may exist where a change in "the settled interpretation of law colored the failure to have raised an issue at trial"). Based upon the facts of this case, we conclude that no exceptional cireumstances exist justifying our review of Father's claim on appeal.
¶ 5 The incarcerated parent in In re A.T. unsuccessfully sought reunification services in the juvenile court and thereby preserved the issue for appeal. Id. 17. In contrast, Father here did not seek reunification services and, indeed, largely failed to participate in the child welfare proceedings leading up to *468 the termination trial. As a result, the juvenile court denied reunification services "until such time as [Father] appears in court." Father did not challenge the failure to order reunification services, which was based upon his failure to appear and participate in the juvenile court proceedings and not upon his incarceration. The district court's October 22, 2012 order reserved consideration of whether Father would be granted reunification services until such time as Father appeared in court. Father did not appear until after Mother had failed in her service plan and the goal for Z.M. had changed from reunification with Mother to adoption or permanent guardianship with Mother's relatives. Because the order denying reunification services was based upon Father's failure to participate in the child welfare case and not on his incarceration, In re A.T., even if viewed as representing a major shift in our jurisprudence, does not offer an escape hatch for Father. Unlike the parent in In re A.T., he was denied services for reasons other than incarceration.
16 Because Father does not otherwise challenge the findings of fact, conclusions of law, and order terminating his parental rights, we affirm the order of the juvenile court.