**UNITED STATES of America**

v.

**James E. JACKSON, Appellant.**

**No. 72–1777.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 10, 1973.

Decided Dec. 12, 1974.

Helen W. Nies, Arlington, Va. (appointed by this Court), for appellant.

William D. Pease, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty. at the time the brief was filed, John A. Terry, and William S. Block, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

■ Appellant was convicted by a jury of armed robbery[1] and assault on the robbery victim with a dangerous weapon.[2] This appeal focuses upon the victim's pretrial and in-trial identifications of appellant, and evidentiary emanations assertedly indicative of his involvement in other criminality. We vacate the conviction on the assault count[3] and affirm on the robbery count.

## I. THE FACTUAL BACKGROUND

Late one night, Alfreda Lillian Butler entered her apartment building and noticed two men in the basement. As she walked toward her apartment on the second floor, the men approached from the rear. They followed her into the apartment and announced that their purpose was a holdup. One stood in front of Ms. Butler holding a sawed-off shotgun while the other stayed behind her. She was told to empty her purse on the living room floor, which she did. The man with the shotgun cursorily checked two other rooms in the apartment and subsequently took Ms. Butler into her bedroom, while the second man searched more thoroughly. When the search ended they left taking among other things, a stereo set.

Fifteen to twenty minutes elapsed from the men's entry to their departure. During that period, Ms. Butler was face to face with the gunman on several occasions. Lights were on over the front door, in the living room and in a bedroom in which her son was asleep, although her own bedroom may have been unlighted.[4] Ms. Butler could not observe the second man sufficiently to enable a later identification.[5]

Ms. Butler gave the police a description of her armed assailant.[6] A few weeks later, Officer Joseph T. Kaclik received word from an informant that appellant was a participant in the robbery.[7] From that point onward, the investigation implicated appellant more and more. Officer Kaclik selected black-and-white photographs of eight persons, including appellant, of the same age group and general description,[8] and presented them

---

1. D.C.Code §§ 22–2901, 22–3202(a) (1973).

2. D.C.Code § 22–502 (1973).

3. An assault with a dangerous weapon on the victim of an armed robbery is a lesser offense included within the robbery offense, and does not support a separate conviction. United States v. Johnson, 155 U.S.App.D.C. 28, 29, 475 F.2d 1297, 1298 (1973). See also United States v. Benn, 155 U.S.App.D.C. 180, 185, 476 F.2d 1127, 1132 (1973); United States v. Wimbush, 154 U.S.App.D.C. 236, 475 F.2d 347 (1973).

4. At appellant's trial, Ms. Butler said the light in this room was on. At the prior hearing of a motion to suppress, she had said that the light was off.

5. The second robber, it later developed, was Wendell Hiett. See text infra at notes 19–21.

6. See note 44, infra, and accompanying text.

7. The informant was Roland Carey, who was to play a prominent role at appellant's trial. See text infra at notes 19–21.

8. Officer Kaclik was later to be questioned on the claim that he selected photographs of subjects similar in complexion. That was of some importance, for Ms. Butler rejected five of the eight photographs because of the complexions of the subjects. Officer Kaclik stated that complexion is hard to reproduce accurately on black-and-white photographs since shadings depend on the exposure. The officer added that he explained the problem to Ms. Butler only after she had made her positive identification of appellant.

to Ms. Butler, who immediately and positively identified appellant as the man who held the shotgun during the robbery.[9] A search warrant executed at appellant's apartment netted a sawed-off single-barreled shotgun.[10] Ms. Butler identified a stereo set recovered by the police[11] as the one taken from her apartment during the robbery. From an eleven-man lineup at police headquarters,[12] Ms. Butler again made a positive identification of appellant.[13] These and other events[14] culminated in an indictment.

Shortly prior to trial, appellant moved to suppress the photographic and lineup identifications, and any in-trial identification to be undertaken. After an evidentiary hearing, the judge denied the motion.[15] At trial, Ms. Butler described the robbery, identified her stereo set, and said that the shotgun found in appellant's apartment was similar to the one used in the robbery.[16] Ms. Butler also testified to her previous photographic[17] and lineup[18] identifications of appellant, and once again identified him in the courtroom. Officer Kaclik confirmed her pretrial identifications of appellant and the stereo set.

A key witness for the Government was Roland Carey, appellant's roommate, whose testimony we may profitably pause to summarize.[19] On the night of the robbery, appellant, Wendell Hiett and Carey talked in appellant's apartment about a "hustle"—a robbery. Carey spurned the plan, so appellant and Hiett left to execute it on their own. Appellant took along the sawed-off shotgun, which he kept in the apartment.

Hiett, carrying Ms. Butler's stereo set, returned to appellant's apartment later, but Carey refused to let him come in. Hiett then went to his own apartment,

---

9. The evidence is uncontradicted that neither the photographic display nor Officer Kaclik in any way influenced Ms. Butler in her selection of appellant's picture.

10. See note 16, *infra*, and accompanying text.

11. The stereo set had been taken to the apartment of Wendell Hiett, appellant's confederate in the robbery. See text *infra* at note 20. Hiett later reported to the police the theft of the stereo set from his apartment. See note 20, *infra.*

12. At the time, appellant was in custody on a charge of possessing a shotgun found in his apartment. See text *supra* at note 10. A photograph of the lineup was introduced by the Government at trial, and it appears as a part of the record on appeal.

13. Ms. Butler, asked on cross-examination whether she had identified appellant "by virtue of that previous photographic identification," replied that she "identified him because he was the man with the gun." Ms. Butler also stated that appellant's hair was longer at the lineup than it had been at the time of the offense.

14. See text *infra* at notes 19–21.

15. In ruling on the motion to suppress, the judge stated:

> The court finds that the photographic identification and the line-up were both conducted in a proper manner and were not so unnecessarily suggestive as to be conducive to an irreparable mistaken identification. Therefore, the defendant was not denied due process of law. The court further finds that, even if the situation were otherwise, so far as the in-court identification is concerned, the complaining witness had ample opportunity to observe the defendant and to have an independent source for an in-court identification of the defendant.

16. As we have said, the shotgun seized by the police had but one barrel. See text *supra* at note 10. Ms. Butler had reported to the police that the shotgun used in the robbery appeared to her to be double-barreled.

17. Ms. Butler did not remember anyone present at the photo-identification session other than Officer Kaclik and herself. Officer Kaclik, however, recalled that a fellow officer was also present.

18. During the course of Ms. Butler's testimony the Government introduced its photograph of the lineup, see note 12, *supra*, and she again pointed to appellant in the photograph as the person she had identified at the lineup, stating that she had no doubt that he was the man with the gun.

19. On cross-examination Carey admitted convictions of two robberies and acknowledged that he faced "18 years in the penitentiary." He also admitted that he was a paid police informant, and that it was he who first gave the police information concerning the robbery of Ms. Butler.

located in an adjacent building.[20] Still later, Carey saw appellant run into Hiett's apartment house. Carey joined them, and both appellant and Hiett told him about the robbery of Ms. Butler.[21]

Appellant's defense was alibi and mistaken identity. He and two witnesses testified that they were playing and watching television in the witnesses' apartment when the robbery was in progress.[22] Appellant also testified that the shotgun did not belong to him but to Carey. The jury persuaded instead by the Government's evidence, convicted.

## II. THE PHOTOGRAPHIC IDENTIFICATION

█ The challenge to Ms. Butler's photographic identification of appellant is predicated upon three distinct grounds, the first of which may at once be discarded. That ground is that, because appellant was already in custody on another charge,[23] the police could not, in the absence of counsel on his behalf, utilize a photographic identification to link him to the robbery. The Supreme Court's recent holding in United States v. Ash,[24] that no Sixth Amendment right to counsel attaches at photo-identification sessions, plainly forecloses acceptance of that argument.

█ A second ground urged is that, with appellant in custody and assertedly available for a corporeal lineup,[25] a photo-identification procedure in lieu of the normally more reliable lineup procedure[26] was constitutionally impermissible because unnecessary.[27] We are unable to characterize the resort to photographs as a gratuitous undertaking here.[28] Photo-identification is an established investigative technique which the Supreme Court has refused to outlaw[29] and which, as Ash and other decisions demonstrate, may properly serve law enforcement needs other than apprehension of criminals at large.[30] Ms. Butler's ex-

**20.** Officer Melvin L. Humphrey testified that he subsequently investigated a burglary of the apartment occupied by Hiett, who reported among the items missing the stereo set later identified by Ms. Butler as the one taken from her during the robbery.

**21.** The Government also presented two other witnesses. Their testimony is not pertinent to this appeal.

**22.** One of appellant's corroborating witnesses based her recollection of that night's events on a calendar of dates she customarily kept. The calendar was not produced at trial, however, because allegedly it had been lost in a fire.

**23.** See note 12, *supra*.

**24.** 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973).

**25.** See United States v. Perry, 164 U.S.App. D.C. 111, 113, 504 F.2d 180, 182 (1974) (statement of Judge McGowan); United States v. Allen, 133 U.S.App.D.C. 84, 85–87, 408 F.2d 1287, 1288–1290 (1969); Adams v. United States, 130 U.S.App.D.C. 203, 207–208, 399 F.2d 574, 579–580 (1968), cert. denied, Roots v. United States, 393 U.S. 1067, 89 S.Ct. 722, 21 L.Ed.2d 710 (1969).

**26.** See N. Sobel, Eye-Witness Identification: Legal and Practical Problems 79 (1972); P.

Wall, Eye-Witness Identification in Criminal Cases 70 (1965).

**27.** The constitutional violation claimed is a deprivation of Fifth Amendment due process of law. See Stovall v. Denno, 388 U.S. 293, 301–302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

**28.** We note in passing that the Supreme Court has left open the question whether, in identification confrontations after Stovall v. Denno, *supra* note 27, use of a less reliable identification procedure instead of a more reliable one available alone requires exclusion of evidence of an ensuing identification. Neil v. Biggers, 409 U.S. 188, 198–199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

**29.** Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

**30.** See United States v. Collins, 416 F.2d 696, 699–700 (4th Cir. 1969), cert. denied, 396 U.S. 1025, 90 S.Ct. 601, 24 L.Ed.2d 519 (1970); United States v. Broadway, 477 F.2d 991, 995–996 (5th Cir. 1971); United States v. Williams, 436 F.2d 1166, 1168–1169 (9th Cir. 1970). That position is implicit in the many cases holding that an accused in custody is not constitutionally entitled to representation by counsel at a photo-identification session. See the listing in United States v. Ash, *supra* note 24, 413 U.S. at 301–302 n. 2, 93 S.Ct. 2568.

amination of the photographs was designed to test unverified information from a paid informant that appellant was one of her assailants. We are less confident than appellant that his presence in a robbery lineup was then compellable,[31] but in any event we perceive no impediment to an effort to fortify the basis for moving in that direction. There is neither claim nor evidence that the methodology of the photographic display in question was in any way suggestive.[32]

■ Appellant's remaining ground is that testimonial reference to the photographic identification unfairly embarrassed his ability to persuade the jury that Ms. Butler had misidentified him. The argument is that appellant could best defend against the identification by exhibition of the photographs to the jury for its appraisal of the accuracy of the identification, a course fraught with danger because the photographs were, in the vernacular, mug shots. In support of this argument, appellant relies on our holding in Barnes v. United States[33] that since an accused's mug shots intimate a prior criminal record, the Government may not ordinarily present them for the jury's inspection.[34]

■ We think appellant presses *Barnes* much too far. The photographs themselves were not placed in evidence,[35] nor were they ever referred to in the jury's presence as mug shots; the question is whether the identification they promoted was outlawed simply by their character. We have consistently honored the Government's prerogative to show testimonially pretrial photographic identifications, which may well be "more meaningful to the jury than the more ritualized in-court identification."[36] Our decisions make clear that that prerogative extends to testimony of identifications based on photographs not typically mug shots,[37] and we see no sound reason for concluding differently when a mug shot is utilized,[38] for the accused need not face the Hobson's choice appellant imagines. The problem to which appellant points may be avoided simply by eliminating the objectionable features of the mug shots,[39] a course trial courts, in

---

**31.** See United States v. Perry, *supra* note 25 (statement of Judge McGowan), and cases cited therein.

**32.** Rather, the claim is that an identification by photograph was in and of itself invalid.

**33.** 124 U.S.App.D.C. 318, 365 F.2d 509 (1966).

**34.** The mug shots to which we speak consist in side-by-side full face and profile photographs, with prison numbers on the bottom half and frequently with other markings. See *id.* at 319, 365 F.2d at 510.

**35.** Despite our prior decision in Barnes v. United States, *supra* note 33, the Government did ask that the photographs be let into evidence, but subsequently withdrew the request.

**36.** United States v. Hallman, 142 U.S.App. D.C. 93, 94–95, 439 F.2d 603, 604–605 (1971). See also United States v. Clemons, 144 U.S. App.D.C. 235, 237, 445 F.2d 711, 713 (1971); Clemons v. United States, 133 U.S.App.D.C. 27, 40, 408 F.2d 1230, 1243 (en banc 1968), cert. denied, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969).

**37.** United States v. Jones, 155 U.S.App.D.C. 328, 334–336, 477 F.2d 1213, 1219–1221

(1973); United States v. Clemons, *supra* note 36, 144 U.S.App.D.C. at 236–237 and n. 2, 445 F.2d at 712–713 and n. 2; United States v. Hallman, *supra* note 36, 142 U.S.App.D.C. at 94, 439 F.2d at 604.

**38.** We have recognized that "[a] juryman might well conjecture that there must have been prior suspicion of the defendant, else why would the police have his photograph," but we have declined to uphold objection on that account since "we cannot push sound principles to untenable extremes." United States v. Hallman, *supra* note 36, 142 U.S. App.D.C. at 94, 439 F.2d at 604. We have instead concluded that "[t]he importance that a jury know of the reality of fair pretrial identification weighs with more substance in the scales of justice that speculative possibility that the jury may conjecture defendant was involved in some other offense." *Id.* at 95, 439 F.2d at 605. See also United States v. Jones, *supra* note 37, 155 U.S.App.D.C. at 335, 477 F.2d at 1218; United States v. Clemons, *supra* note 36, 144 U.S.App.D.C. at 237, 445 F.2d at 713.

**39.** Prison numbers may be excised, other markings may be masked or deleted, side-by-side shots may be separated, and photographic copying may be resorted to if necessary.

exercise of their powers to safeguard the fairness of trials, may insist upon. At appellant's trial, the District Court's discretion to that end was never invoked,[40] if indeed appellant wished to test the identification against the photograph. We cannot find just cause for the present complaint.

## III. THE LINEUP IDENTIFICATION

■ Appellant next complains of the lineup at which, following the photographic presentation, he was again identified by Ms. Butler before trial. The contention is that the lineup was impermissibly suggestive because he was the only one in the lineup with a bush hairstyle. The initial inquiry here is whether the lineup "was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law."[41] If suggestive but not unconstitutionally so,[42] the further inquiry is "whether under 'the totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive."[43] Our answers to both questions are in the negative.

■ Shortly after the robbery, Ms. Butler described the armed robber as "a Negro male, late 20's, five-foot-ten stocky build, medium complexion, bush haircut dark clothing."[44] In the challenged lineup were eleven black males who, though generally of similar appearance, nonetheless presented the viewer with some range of variation. Between the shortest and the tallest was a difference of about eight inches; eight in the line-up, including appellant, were within approximately four inches of equal height. None was unusually slender or abnormally stout, but there were differences in build. None seemed particularly young or particularly old, but it was manifest that they were not all of the same age. None had a distinctly heavy beard, but some had facial hair and some did not, and haircuts diverged considerably. In this context, we think it clear, as the trial judge concluded,[45] that appellant's bush hairstyle was not "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to amount to a constitutional violation.[46]

■ Moreover, even assuming *arguendo* that the hairstyle was in some degree suggestive, we cannot believe that it so distinctively marked him as to generate a substantial likelihood of misidentification.[47] In Neil v. Biggers,[48] the Supreme Court instructed that

the factors to be considered in evaluating the likelihood of misidentification

Compare United States v. Jones, *supra* note 37, 155 U.S.App.D.C. at 334, 477 F.2d at 1219; Vaughan v. State, 215 Ind. 142, 19 N.E.2d 239, 241 (1939); Huerta v. State, 390 S.W.2d 770, 772 (Tex.Cr.App.1965). *Cf.* Barnes v. United States, *supra* note 33, 124 U.S.App.D.C. at 321, 365 F.2d at 512. The assistance of the court is available to defense counsel, as is the Government's assistance on direction by the court as a precondition, in the interest of fairness, to admission of testimony of the photographic identification.

**40.** See, *e.g.*, Walker v. United States, 124 U.S.App.D.C. 194, 195, 363 F.2d 681, 682 (1966).

**41.** Stovall v. Denno, *supra* note 27, 388 U.S. at 302, 87 S.Ct. at 1972. See also Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969).

**42.** See Neil v. Biggers, *supra* note 28, 409 U.S. at 198–199, 93 S.Ct. 375.

**43.** *Id.* at 199, 93 S.Ct. at 382, quoting Stovall v. Denno, *supra* note 27, 388 U.S. at 302, 87 S.Ct. 1967.

**44.** This was the description received by the police. The description Ms. Butler recalled furnishing did not vary significantly.

**45.** See note 15, *supra*.

**46.** See text *supra* at note 41.

**47.** Neil v. Biggers, *supra* note 28, 409 U.S. 198, 201, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)

We are, of course, assisted by the photograph of the lineup, see note 12, *supra*. Compare United States v. Hines, 147 U.S.App.D.C. 249, 261–262, 455 F.2d 1317, 1329–1330 (1971); cert. denied, 406 U.S. 975, 92 S.Ct. 2427, 32 L.Ed.2d 675 (1972). Indeed, Ms. Butler testified that appellant's hair was longer at the time of the lineup than it was at the time of trial. See note 13, *supra*.

**48.** *Supra* note 28.

include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.[49]

Ms. Butler observed the robber bearing the shotgun over a period of fifteen or twenty minutes,[50] throughout which she was in close proximity to the gunman—sometimes face-to-face.[51] During a good part of the time the lighting conditions were good,[52] and Ms. Butler had good reason to remember her assailant.[53] After her ordeal was over, she was able to give the police a reasonably accurate description of the gunman,[54] and her successive identifications of appellant were consistent and invariably emphatic. In "the totality of the circumstances"[55] we discern no ground for doubting the reliability of the lineup identifications.[56] We accordingly sustain the trial judge's conclusion that the lineup was constitutionally fair,[57] and his action in admitting testimony of the lineup identification at trial.

## IV. THE IN-TRIAL IDENTIFICATION

■ Our holdings that Ms. Butler's photographic[58] and lineup[59] identifica-tions pass constitutional muster mean necessarily that her in-trial identification was free from any vitiating taint of illegality.[60] It does not mean, however, that inquiry into her capacity to undertake a courtroom identification is at an end. Appellant argues that inconsistencies in Ms. Butler's trial testimony[61] demonstrate that her in-trial identification was the product of the pretrial identification sessions rather than of observations at the time of the robbery, and as such was improperly allowed. In considering this contention, we deal not with a constitutional infirmity, but rather with the competence of the witness.

■ To be sure, an identification of one as the perpetrator of a crime may rest only upon impressions gained from the singling out of the criminal — can be accomplished from no other source. Post-offense identification confrontations, photographic or corporeal, may provide corroboration for an identification, but they may not serve as its foundation. It does not follow, however, that inconsistencies in an identification witness' trial testimony necessarily reflect a disqualifying inability to independently recognize the offender. Untrustworthiness of a proffered identification, and of course its inadmissibility, depend upon how impaired or lacking the ability to do so may be.

---

**49.** 409 U.S. at 199–200, 93 S.Ct. at 382.

**50.** Compare Neil v. Biggers, *supra* note 28, 409 U.S. at 200, 93 S.Ct. 375, and see note 49, *supra.*

**51.** Compare *id.* at 200–201, 93 S.Ct. 375, and see note 49, *supra.*

**52.** Compare Neil v. Biggers, *supra* note 28, 409 U.S. at 200, 93 S.Ct. 375, and see note 49, *supra.*

**53.** Compare Neil v. Biggers, *supra* note 28, 409 U.S. at 200–201, 93 S.Ct. 375, and see note 49, *supra.*

**54.** Compare *id.* at 200, 93 S.Ct. 375, and see note 49, *supra.*

**55.** See text *supra* at note 43.

**56.** We are mindful that the lineup took place two and a half months after the robbery. We think any negative implication from that cir-cumstance was greatly outweighed by the positive factors.

**57.** See note 15, *supra.*

**58.** See Part II, *supra.*

**59.** See Part III, *supra.*

**60.** See text *supra* at notes 41–43.

**61.** The inconsistencies referred to were Ms. Butler's (a) testimony at trial that a light was on in her bedroom, and her testimony on the hearing of the motion to suppress that there was no light on in that room, see note 4, *supra;* (b) her testimony at the hearing that no one was with Officer Kaclik at the photographic identification, and the latter's testimony that he was accompanied by another officer, see note 17, *supra;* and (c) relatively small variations between Ms. Butler's trial description and her post-offense description, text *supra* at note 44, regarding the age, height and build of the gunman.

The problem of witness-competence is accentuated in cases wherein the guilt of the accused is sought to be rested on an uncorroborated identification by a single witness.[62] For situations of that sort, we have advised caution by the trial judge in retaining the case for the jury's decision on guilt.[63] The test for sufficiency of the identification as the foundation for a verdict of guilty, we said, is whether the circumstances affecting it give rise to a substantial likelihood of mistaken identification.[64] In the case at bar, Ms. Butler's identification of appellant was extensively confirmed by other evidence;[65] surely her competence as an identification witness was not to be judged by a more exacting standard.[66] And applying essentially the same test in another context,[67] we have detected no appreciable likelihood of error in her attempt at identifying appellant.

Short of that risk, the credibility of Ms. Butler's identification was a matter for the jury.[68] In sum, the relatively minor inconsistencies in her testimony at trial[69] did not call for intervention by the judge. The jury, fully aware of those inconsistencies and deliberating under unchallenged instructions by the judge, accepted the identification. In the circumstances, it was its prerogative to do so.

## V. THE OTHER-CRIMES REFERENCES

Lastly, appellant asserts that he was victimized by three separate trial occurrences which indicated to the jury that he had engaged in other criminality. He argues that the disclosure of the photographic identification, actually based on mug shots,[70] suggested to the jury his prior involvement with law enforcement authorities. The record makes plain, however, that at no time during trial were the mug shots referred to as anything but ordinary photographs, and that they were never introduced into evidence or shown to the jury. We are unwilling to speculate that somehow the jury may have recognized them for what they were.[71]

Appellant next argues that the testimony that a search warrant was executed at his apartment[72] implicated him in another crime. The argument fails because there was nothing to indicate that the warrant was issued for any offenses other than those for which ap-

---

62. See United States v. Telfaire, 152 U.S.App. D.C. 146, 149 n. 5, 469 F.2d 552, 555 n. 5 (1972).

63. *Id.*

64. *Id.*, where we quoted the Fourth Circuit:
[A] district judge has the power to refuse to permit a criminal case to go to the jury even though the single eye witness testifies in positive terms as to identity . . ..
In deciding whether to permit a criminal case to go to the jury, where identification rests upon the testimony of one witness, the district judge ought to consider with respect to identification testimony the lapse of time between the occurrence of the crime and the first confrontation, the opportunity during the crime to identify . . ., the reasons, if any, for failure to conduct a line-up or use similar techniques short of line-up, and the district judge's own appraisal of the capacity of the identifying witness to observe and remember facial and other features. In short, the district judge should concern himself as to whether the totality of circumstances

"give[s] rise to a very substantial likelihood or irreparable mistaken identification."
United States v. Levi, 405 F.2d 380, 383 (4th Cir. 1968), quoting Simmons v. United States, *supra* note 29, 390 U.S. at 384, 88 S.Ct. 967. Compare Neil v. Biggers, *supra* note 28, 409 U.S. at 198–201, 93 S.Ct. 375.

65. See text *supra* at notes 19–21.

66. So, we need not consider the specifics of the test of competency applicable in other than single-eyewitness cases.

67. See Part III, *supra*.

68. United States v. Lewis, 140 U.S.App.D.C. 40, 42 n. 3, 433 F.2d 1146, 1148 n. 3 (1970); Russell v. United States, 133 U.S.App.D.C. 77, 82, 408 F.2d 1280, 1285, cert. denied, 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245 (1969).

69. See note 61, *supra*.

70. See Part II, *supra*.

71. Compare United States v. Hallman, *supra* note 36, 142 U.S.App.D.C. at 94, 439 F.2d at 604, quoted *supra* note 38.

72. See text *supra* at note 10.

pellant was on trial. The questioned testimony was simply that an officer went to the apartment to execute the warrant, found appellant there, and recovered the shotgun later identified as the weapon used during the robbery.[73]

■ Appellant's final complaint relates to a statement by Carey, on cross-examination by appellant's trial counsel,[74] that appellant had been arrested on another charge.[75] When that came out, the trial judge, at defense counsel's request, instructed the jury to disregard the statement and denied counsel's motion for a mistrial. Surely the statement cannot be charged to the Government, and in our view it did not warrant a retrial of the case. The evidence of appellant's guilt was strong, and the judge's admonitory instruction to the jury was swift. Whatever any uncured residium of the statement may have been, we are unpersuaded that it could have substantially swayed the verdict.[76]

The judgment of conviction of assault with a dangerous weapon is vacated.[77] The conviction of armed robbery is affirmed.

So ordered.

**73.** Appellant also argues that the introduction of the shotgun into evidence was improper because it was not sufficiently connected to the robbery. We disagree. Ms. Butler testified that the shotgun was similar to the shotgun which one of the robbers had. Roland Carey testified that the shotgun belonged to appellant, and that appellant had it when he left the apartment with Hiett to commit the robbery. On that testimony, the shotgun was properly admitted into evidence. United States v. McKinley, 158 U.S.App.D.C. 280, 281, 485 F.2d 1059, 1060 (1973); Pinkney v. United States, 124 U.S.App.D.C. 209, 211, 363 F.2d 696, 698 (1966). See also United States v. Thornton, 149 U.S.App.D.C. 203, 205, 462 F.2d 307, 309 (1972). Whether Ms. Butler's testimony was to be credited, in view of her prior description of the weapon to the police, see note 16, *supra*, was within the exclusive province of the jury.

**74.** Not his counsel on appeal.

**75.** The relevant portion of the cross-examination was as follows:

Q. How long have you all been living at the Ivanhoe Street address?
A. Since the first of November.
Q. And did you stay living together after December 17th?
A. We kept the apartment until approximately the first—I think it was the first of March.
Q. And then what happened?
A. Well, the first of February [appellant] was arrested for another charge and his brother ran the apartment and it was a lot of controversy . . . . .

**76.** Compare Hardy v. United States, 119 U.S. App.D.C. 364, 365, 343 F.2d 233, 234 (1964), cert. denied, 380 U.S. 984, 85 S.Ct. 1353, 14 L.Ed.2d 276 (1965) (reference to accused's imprisonments); McIntosh v. United States, 114 U.S.App.D.C. 1, 309 F.2d 222 (1962) (reference to accused's parole officer); United States v. Woodring, 446 F.2d 733, 736–737 (10th Cir. 1971) (reference to another criminal charge). See also Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1966).

**77.** See note 3, *supra*, and accompanying text.