STATE of Utah, Plaintiff and Appellee,

v.

Benny LOPEZ, Defendant and Appellant.

No. 910074.

Supreme Court of Utah.

Dec. 8, 1994.

Jan Graham, Atty. Gen., J. Frederic Voros, Jr., Todd Utzinger, Asst. Attys. Gen., Salt Lake City, for plaintiff.

Lee C. Rasmussen, Salt Lake City, for defendant.

HOWE, Justice:

Defendant Benny Lopez appeals from his conviction of two first degree felonies, aggravated sexual abuse of a child in violation of Utah Code Ann. § 76–5–404.1 (1990) and sodomy on a child in violation of Utah Code Ann. § 76–5–403.1 (1990).

At approximately 8:30 a.m. on Friday, December 8, 1989, the victim, a ten-year-old female student at Timpanogos Elementary School, was molested by a stranger as she walked through a tunnel beneath the street adjacent to the school. When the attacker left the tunnel, the victim ran to the school principal's office and told the secretary that she wanted to see the principal because a man in the tunnel had "poked [her] in the privates." After speaking with the principal, the police, and the victim's mother, the victim was taken to the emergency room at Utah Valley Regional Medical Center for an examination. The physician's examination of the victim, which documented a tear in the hymen and the presence of a small amount of blood, was consistent with the victim's account of the attack.

Although nobody witnessed the attack, four people saw a man whom they later identified as Lopez near the school during the hour of the attack. The man appeared suspicious to the witnesses because on that morning and for several mornings prior to the attack, he had sat in his vehicle in an area where no places of business had opened for the day. He would watch the surrounding area closely, often leaving for short explorations and then returning. One witness copied down the license plate number of his vehicle, and on the afternoon following the attack, the police used the number to locate Lopez and his vehicle at Utah Valley Community College ("UVCC") (now known as Utah Valley State College).

The police arrested Lopez, who immediately requested an attorney. Before receiving an attorney, however, he agreed to pose for a photograph, and police officer Brad Leatham used this picture to prepare a "photo array," a collection of six photographs to be shown to the victim and other witnesses for the identification of the attacker. The police department's policy for preparing photo arrays was to choose photos of people who were about the same age as the suspect, with the same ethnic background, skin tone, hair color, hair length, and facial hair. Although Lopez has a "marginally Hispanic appearance," the photo array included only one other photograph of a man with Hispanic-type features. Additionally, Lopez's photograph was the only one with a clear, white background. However, Officer Leatham's superior, Captain George Pierpont, described the photo array as a good one because Lopez was not obviously Hispanic and the skin tones of most of the men in the photo array were similar to that of Lopez.

Lopez's attorney was not present when Officer Leatham showed the photo array to the victim or to any of the other four witnesses who saw the suspicious man parked near the crime scene. Only the victim and two of the other witnesses identified Lopez from the photo array, but all five eyewitnesses identified Lopez at the preliminary hearing. After the hearing, Lopez was bound over to the district court to await arraignment.

At the arraignment, Kent Willis withdrew as defense counsel due to a conflict of inter-

est. Stephen Madsen appeared to represent Lopez, and he represented him throughout the pretrial hearing and the suppression hearing. At the suppression hearing, the court denied Lopez's motion to suppress evidence of the photo array identification and eyewitness identification. The court determined that the lack of counsel at the photo array identification was not a violation of Lopez's constitutional rights and the array was not impermissibly suggestive.

Madsen continued to represent Lopez during the trial and sentencing. Lopez was found guilty, and the court sentenced him to one mandatory term of six years to life for aggravated sexual abuse of a child and to another mandatory term of ten years to life for sodomy on a child, the terms to run concurrently. Lopez appeals.

Before hearing arguments on appeal, this court ordered the trial court to hold an evidentiary hearing pursuant to rule 23B of the Utah Rules of Appellate Procedure to determine whether Lopez had received ineffective assistance of counsel. At this hearing, Lopez indicated that he was satisfied with Madsen's representation but argued that Willis's failure to conduct an immediate and adequate investigation of his alibi constituted ineffective assistance of counsel. The trial court ruled that Willis's conduct was not deficient and refused to grant a new trial.

The first issue presented on appeal is whether the police violated Lopez's Sixth Amendment right to counsel by failing to provide him with an attorney at the photo identification procedure. The second issue is whether the photo array was impermissibly suggestive, making subsequent eyewitness identification at trial a violation of federal and state constitutional due process. Finally, Lopez contends that the ineffective assistance of his counsel entitles him to a new trial.

## RIGHT TO COUNSEL AT A PHOTO IDENTIFICATION PROCEDURE

■ Lopez argues that a federal constitutional right to counsel at a photo identification procedure is implied by *United States v.*

*Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), which held that defendants are entitled to counsel when they appear in a lineup. Lopez cites two other cases in support of his argument, *Thompson v. State,* 85 Nev. 134, 451 P.2d 704 (1969), and *People v. DeMeyers,* 183 Mich.App. 286, 454 N.W.2d 202 (1990), which held that a defendant is entitled to counsel at photo identification procedures. Lopez asserts that *United States v. Ash,* 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973), which held that the defendant was not entitled to counsel at a photo identification procedure, does not preclude this court from finding a Sixth Amendment right to counsel. He asserts that the defendant in *Ash,* unlike himself, was not in custody when law enforcement officials showed the photo array to witnesses.

Because Lopez does not assert that the Utah Constitution grants him the right to counsel at a photo identification procedure, we will undertake no such analysis. We begin by addressing the United States Supreme Court's holding in *Ash.* There, the defendant was convicted of robbing a federally insured bank, and he appealed on the ground that the Sixth Amendment ensured him the right to have counsel present at a post-indictment photo identification procedure. *Id.* at 300–01, 93 S.Ct. at 2569. The procedure that the defendant challenged was conducted shortly before trial but long after the defendant's arrest and indictment. *Id.* at 303, 93 S.Ct. at 2570. Although law enforcement officials in *Ash* had conducted a separate photo identification procedure before the defendant was arrested and indicted, the defendant did not challenge that procedure. *Id.* at 303 n. 3, 93 S.Ct. at 2570 n. 3. In his challenge, the defendant in *Ash* relied on *United States v. Wade,* where the Court held that the Sixth Amendment entitles defendants to counsel at lineups. *Id.* at 311, 93 S.Ct. at 2574. The defendant argued that, like the defendant in *Wade,* he was forced to face a trial-like confrontation which required the assistance of counsel to preserve the adversary process and deny the prosecution the advantage of encountering an unprotected defendant. *Id.* at 312–14, 93 S.Ct. at 2575–76. The United States Supreme Court rejected this argument, explaining that

"[s]ince the accused himself is not present at the time of the photographic display ... no possibility arises that the accused might be misled by his lack of familiarity with the law or overpowered by his professional adversary." *Id.* at 317, 93 S.Ct. at 2577.

In *Ash,* the United States Supreme Court irrefutably ruled that the Sixth Amendment does not entitle defendants to counsel during photo array presentations to witnesses, and this ruling applies to presentations made before and after indictment. However, we acknowledge that there is some authority to the contrary. Two states, Michigan and Pennsylvania, afford defendants the right to counsel at a photo identification procedure if the procedure occurs after arrest. We review these holdings separately.

Three months before the United States Supreme Court decided *Ash,* the Michigan Supreme Court adopted two rules for photo identification procedures. First, photo identification procedures cannot be used after the suspect is arrested unless a lineup is not practicable. Second, if such procedure is used after arrest, the suspect is entitled to counsel. *People v. Anderson,* 389 Mich. 155, 186–89, 205 N.W.2d 461, 476 (1973). The court based its decision on three United States Supreme Court decisions, including *Wade, Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), which held that any evidence of a pretrial lineup where counsel was not present is per se inadmissible, and *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), which held that due process prohibits evidence of impermissibly suggestive photo identification procedures. *Anderson,* 205 N.W.2d at 465–66. Although *Ash* later rejected the argument that these cases imply a Sixth Amendment right to counsel at photo identification procedures, *Ash,* 413 U.S. at 314–18, 93 S.Ct. at 2576–78, the Michigan Supreme Court upholds its photo identification rules. *People v. Kurylczyk,* 443 Mich. 289, 300, 505 N.W.2d 528, 532 (1993). However, the court does acknowledge the contrary ruling of the United States Supreme Court and bases its photo identification rules on state case law. *Id.*

The Pennsylvania Supreme Court gave defendants the right to counsel at photo identification procedures three years before *Ash. Commonwealth v. Whiting,* 439 Pa. 205, 209–10, 266 A.2d 738, 740 (1970). In *Whiting,* the court relied on *Wade* and *Stovall,* two of the same cases the Michigan Supreme Court relied upon in *Anderson. Id.,* 266 A.2d at 739–40. After the United States Supreme Court issued *Ash,* the Pennsylvania Supreme Court upheld its ruling in *Whiting.* The court asserted: "The *Whiting* standard, which is more favorable to the accused than the federal standard, recognized that a suspect is entitled to the protection afforded by the presence of counsel once the government has made a commitment to prosecute.... [I]n Pennsylvania [that commitment is] established by the arrest of the accused." *Commonwealth v. DeHart,* 512 Pa. 235, 253, 516 A.2d 656, 665 (1986) (citing *Ash* ).

We note that a few other state supreme courts have held that the Sixth Amendment gives defendants the right to counsel at photo identification procedures, but these courts reversed their holdings after *Ash.* One court that followed this route was the Nevada Supreme Court. That court initially found "no substantial distinction between a lineup and a substituted photographic display while the suspect is in custody." *Thompson v. State,* 85 Nev. 134, 139, 451 P.2d 704, 707 (1969). Therefore, the court prohibited the prosecution from presenting evidence of the photo identification procedure at trial. *Id.* As the State points out, however, the Nevada Supreme Court overturned this ruling after *Ash. Barone v. State,* 866 P.2d 291, 292 (Nev.1993); *French v. State,* 95 Nev. 586, 590 n. 3, 600 P.2d 218, 221 n. 3 (1979).

Despite the Michigan and Pennsylvania Supreme Court rulings, the Sixth Amendment does not entitle Lopez to counsel at a photo identification procedure. These rulings diverge from *Ash,* and it has been well established for almost two centuries that the United States Supreme Court is the final arbitrator of federal constitutional issues. *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803); *Jenkins v. Swan,* 675 P.2d 1145 (Utah 1983).

■ Next, we address defendant's argument that section 77–8–2 gives him the right to counsel during a photo identification procedure. Section 77–8–2 provides:

> A suspect has the right to have his attorney present at *any lineup*. The magistrate or party in charge of the lineup shall notify the suspect of this right. Every suspect unable to employ counsel shall be entitled to representation by an attorney appointed by a magistrate for a lineup either before or after an arrest.

Utah Code Ann. § 77–8–2 (1990) (emphasis added). At one end of the spectrum, we can be certain that the legislature intended the term "any lineup" to include formal lineup procedures where the suspect and a group of people who resemble the suspect stand before a witness for identification purposes. At the other end, this court has ruled that section 77–8–2 does not apply to informal identification procedures such as "show-ups," where police bring a suspect directly to a witness shortly after an alleged crime for a one-on-one confrontation. *State v. Poteet,* 692 P.2d 760, 763 (Utah 1984). To determine whether a photo array is a "lineup" that is governed by the statute or simply an informal identification procedure like a show-up, we look to the rules of statutory construction.

■ First, we must presume that the legislature used each word advisedly, and we give effect to each word according to its usual and accepted meaning. *Versluis v. Guaranty Nat'l Cos.,* 842 P.2d 865, 867 (Utah 1992). When interpreting an ambiguous term, we try to discover the underlying intent of the legislature by looking to the legislative history and the purpose of the statute as a whole. *Sullivan v. Scoular Grain Co. of Utah,* 853 P.2d 877, 879 (Utah 1993). Where no purpose is advanced, however, it is appropriate to interpret specific words in accordance with their common law meaning. *See Clover v. Snowbird Ski Resort,* 808 P.2d 1037, 1045 (Utah 1991).

*Black's Law Dictionary* defines "lineup" as "a police identification procedure by which the suspect in a crime is exhibited, along with others with similar physical characteristics, before the victim or witness to determine if he can be identified as having committed the offense." *Black's Law Dictionary* 641 (6th ed. 1991). This definition seems to contemplate a lineup of human beings, not of photographs, when it states that "the suspect" is exhibited. If the definition included photo arrays, it more likely would have indicated that "the suspect or his likeness" or "the suspect or a representation of him" is exhibited. However, we do acknowledge that there is room for ambiguity in this definition, and because the legislative history provides no helpful information, we turn to the common law definition of "lineup."

We have already indicated that the United States Supreme Court did not include photo arrays in its definition of "lineup" in *Ash.* Although the *Ash* definition is not universally accepted, it seems to be the most commonly accepted definition. As the State points out, many courts have adopted it. *See, e.g., Mikel v. Thieret,* 887 F.2d 733, 738 (7th Cir.1989); *United States v. Gay,* 623 F.2d 673, 675–676 (10th Cir.1980); *United States v. Danzey,* 594 F.2d 905, 910 (2d Cir.1979); *United States v. Jackson,* 509 F.2d 499, 503 (D.C.Cir. 1974); *Fountain v. State,* 273 Ark. 457, 463, 620 S.W.2d 936, 940 (1981); *People v. Suttle,* 90 Cal.App.3d 572, 581, 153 Cal.Rptr. 409, 414–15 (1979); *Rawlings v. State,* 720 S.W.2d 561, 577 (Tex.Ct.App.1986); *State v. Clark,* 48 Wash.App. 850, 861, 743 P.2d 822, 829 (1987). Thus, we conclude that in accordance with the largely accepted common law definition, the Utah legislature did not include photo arrays in the term "lineup" in section 77–8–2.

■ Although we find that the Sixth Amendment does not entitle suspects to counsel at photo identification procedures, we recognize the hazards inherent in these procedures. As we noted in *State v. Long,* 721 P.2d 483, 488, 491 (Utah 1986) (quoting *Wade,* 388 U.S. at 228, 87 S.Ct. at 1933): "The literature is replete with empirical studies documenting the unreliability of eyewitness identification.... '[T]he annals of criminal law are rife with instances of mistaken identification.'" Because of these problems, we have not left the defendant who participates in a photo identification procedure without recourse. Under federal due process, any photo array may be scrutinized

to determine whether it was so impermissibly suggestive that it undermines our confidence in any subsequent in-court eyewitness identification. *State v. Thamer,* 777 P.2d 432, 435 (Utah 1989). Also, we have required trial courts to instruct juries that eyewitness identification is not necessarily reliable, and an articulated set of factors must be considered in determining the reliability of eyewitness identification. *Long,* 721 P.2d at 493. In addition, in interpreting the state constitution in *State v. Ramirez,* 817 P.2d 774, 778–79 (Utah 1991), we extended the protection for defendants by requiring the prosecution to lay a foundation for the admissibility of any eyewitness identification. The trial court must rule on the constitutional admissibility of this evidence before it can be presented to the jury. *Id.* Thus, even though the federal constitution does not entitle defendants to counsel at photo identification procedures, the "safety nets" outlined above provide reliable protection for defendants who are unrepresented at the procedures.

■ Like this defendant, we are concerned that law enforcement officials, in an effort to accommodate their heavy workloads, might use photo arrays as a substitute for lineups. We strongly discourage this practice. We agree with the Michigan Supreme Court that "a photographic identification, even when properly obtained is clearly inferior to a properly obtained corporeal identification. Consequently, witnesses should be asked to examine photographs only when a proper corporeal identification is impossible ... or difficult." *Anderson,* 205 N.W.2d at 474 (citing *Simmons v. United States,* 390 U.S. 377, 383–84, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968)). As defendant points out, the Federal Bureau of Investigation has an excellent policy regarding photo arrays. Bureau policy is that photo identification techniques are not permissible after arrest if a lineup is "reasonably practicable." Federal Bureau of Investigation, *Legal Handbook for Special Agents* § 6–4.1 (1994). We encourage law enforcement officials to consider implementation of such a policy and to curb the use of photo arrays as much as possible.

## IMPERMISSIBLE SUGGESTIVENESS OF THE PHOTO ARRAY

■ The second issue Lopez presents for review is whether the trial court violated due process by refusing to suppress evidence of photo-array identification and in-court eyewitness identification. He asserts that the photo array was impermissibly suggestive under the federal Due Process Clause because the witnesses' attention was improperly focused on his photograph. However, he acknowledges that he is unable to explain in detail how the photo array was impermissibly suggestive because the photo array is not available for either defendant's present counsel or this court to examine. He argues that the loss of the photo array after trial justifies a remand for a new trial because without the array there cannot be a fair and complete review of the trial.

■ We find that the loss of the photo array after trial does not prevent us from reviewing the issue of impermissible suggestiveness because the record provides us with a detailed description of the array. To determine whether the photo array was so suggestive that subsequent admission of eyewitness testimony at trial violated federal due process, we apply a two-part test. Ideally, we would apply this test by examining the photo array itself, but when that is impossible, a detailed description of the challenged photo array is sufficient. The first part of the test requires us to determine whether the "pretrial photographic identification procedure used ... was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *State v. Thamer,* 777 P.2d 432, 435 (Utah 1989). The second part dictates that if the photo array was impermissibly suggestive, any in-court eyewitness identification "must be based on [an] untainted, independent foundation to be reliable." *Id.*

■ In evaluating whether a pretrial photo identification procedure is impermissibly suggestive under the first part of the test, the main question is whether the photo array emphasized the defendant's photo over the others. *Id.* at 435. Some factors to consider include whether the words and body

language of the police officers who presented the array conveyed an attitude of disinterest, whether the officers manipulated the photos to indicate their belief that one of the photos portrayed the perpetrator, and whether the photos themselves were selected so that the defendant's photo stood out from the rest. *Id.*

In the case at hand, the officer maintained a neutral stance and said very little during the presentation of the photo array to the victim and other witnesses. The witnesses testified that the only words the officer used were directives to look at the photos slowly and carefully before making an identification. Clearly, these directives cannot be interpreted as suggestive behavior.

The extensive description of the photo array in the transcript from the suppression hearing should tell us whether the officer manipulated the photos or whether defendant's photo stood out from the rest. The first subject in the photo array was heavyset with wire frame glasses, dark hair, full beard, and full mustache; the second subject was "big" with wire frame glasses, dark hair, full beard, and full mustache; the third subject was Lopez, who was heavyset with wire frame glasses, dark hair, full beard, and full mustache; the fourth subject was heavyset with wire frame glasses, dark hair, and full beard; the fifth subject had dark glasses, dark hair, full beard, and full mustache; and the sixth subject was heavyset with plastic frame glasses, brown hair, full beard, and full mustache. The photo array appears adequately matched. Indeed, the description of subject number one exactly matches that of Lopez, and the descriptions of all of the other subjects match quite closely.

One of defendant's main objections is that only one of the subjects, number five, appeared marginally Hispanic like Lopez. In making up the photo array, Officer Leatham testified that he did not specifically search for Hispanic subjects. Instead, he elected to match the subjects by skin tone. All of the subjects he chose had medium to dark complexions like Lopez, except number four who had a medium complexion and a "lighter forehead." Although the failure of an officer to match subjects according to ethnicity is usually a strong indication of impermissible suggestiveness, the suspect here was not clearly a member of the Hispanic ethnic group. The key is whether the descriptions of the subjects in the photo array match the description of the suspect. We find that in this case, matching the subjects by skin tone was sufficient.

In arguing that the photo array was impermissibly suggestive, defendant points out that the witnesses' descriptions of the perpetrator "vacillated" and that two witnesses who did not identify him in the photo array identified him in court. Neither the record nor the briefs reveal any significant vacillations in the witnesses' descriptions of the perpetrator, but we note that the witnesses' initial descriptions were incomplete. For example, one witness described the perpetrator as having a mustache but did not mention a beard. Another remembered the beard but not the mustache. One witness described the perpetrator's hair as dark, while another described it as black. Some witnesses said he was heavyset, while others did not mention his build. These incomplete descriptions do not justify a finding that the photo array was impermissibly suggestive because they do not indicate inappropriate behavior on the part of the police, nor do they tend to show that one photo in the array stood out from the rest.

As to the two witnesses who identified Lopez in court after failing to identify him in the photo array, we find their inconsistency to be insignificant. One of these witnesses "didn't really see [the suspicious man's] face," and the other was "less than ten percent sure of his identification." Additionally, the victim and the two witnesses who identified Lopez in the photo array and at the preliminary hearing were quite sure of their identifications.

■ Even if these incomplete descriptions and inconsistent identifications show some indicia of suggestiveness in the photo array, which is highly doubtful, the totality of the circumstances indicates that the subsequent in-court eyewitness identification was reliable. *See Thamer*, 777 P.2d at 435–36 (listing the factors that contribute to reliability). Neither the victim nor the other wit-

nesses can be disregarded as "'casual or passing observer[s].'" *Id.* at 436 (quoting *Manson v. Brathwaite,* 432 U.S. 98, 115, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154 (1977)). The victim, who identified Lopez in court, saw her attacker in a well-lighted tunnel for several minutes. The other four witnesses who identified Lopez took particular notice of him because he appeared suspicious. Although the descriptions given by the victim and other witnesses were not complete, none of the descriptions inaccurately described Lopez. In addition, the witnesses who identified Lopez in the photo array identified him on the same day as the attack, so it is unlikely that the passage of time affected the witnesses' memories of the perpetrator. Finally, all of the witnesses identified Lopez at the preliminary hearing because they remembered him from the day of the attack, not because they remembered him from the photo array. Thus, we find that even if some indicia of suggestiveness did exist, the subsequent in-court identification was based on an independent foundation.

■ Next, we consider defendant's contention that the photo array was impermissibly suggestive under state due process, Utah Const. art. I, § 7, as defined by *State v. Ramirez,* 817 P.2d 774 (Utah 1991). At trial, defendant did not object to either the photo array or the in-court identification on the basis of state due process or the principles of *Ramirez,* which was decided after Lopez's trial. Therefore, we must determine whether Lopez may now raise that issue on appeal.

■ The general rule is that issues not raised at trial cannot be argued for the first time on appeal, and this rule applies to constitutional questions. *State v. Olsen,* 860 P.2d 332, 335 (Utah 1993). However, in *In re Woodward,* 14 Utah 2d 336, 384 P.2d 110 (1963), this court first noted that if the liberty of an appellant is in jeopardy, the appellant may raise a constitutional issue for the first time on appeal. This exception was used sporadically in the following decades. *State v. Jameson,* 800 P.2d 798 (Utah 1990) (allowing appellant to raise issue of double jeopardy for first time on appeal); *State v. Breckenridge,* 688 P.2d 440 (Utah 1983) (allowing appellant to raise constitutional issues

to set aside guilty plea to charge of arson). The Utah Court of Appeals wrote an excellent account of the history of the "jeopardized liberty" exception in *State v. Archambeau,* 820 P.2d 920 (Utah Ct.App.1991). In that case, the court pointed out that the jeopardized liberty exception has never been explained, has been ignored in some cases where it could have applied, and has been employed only when the "plain error" or "exceptional circumstances" exceptions also existed. *Id.* at 923–25. The court concluded:

> [A] defendant may not assert a constitutional issue for the first time on appeal unless he can demonstrate "plain error" or "exceptional circumstances." The fact that a "liberty interest" is at stake is merely one factor articulated by the [Utah Supreme Court] to be considered when determining whether "exceptional circumstances" exist.

*Id.* at 925. We agree.

Lopez cannot raise the issue of state due process for the first time on appeal because he has not demonstrated that the "plain error" or "exceptional circumstances" exceptions exist. *See State v. Powell,* 872 P.2d 1027, 1030–31 (Utah 1994) (explaining the plain error exception as enunciated in *State v. Dunn,* 850 P.2d 1201, 1208 (Utah 1993)); *Jolivet v. Cook,* 784 P.2d 1148, 1151 (Utah 1989) (explaining the exceptional circumstances exception). Additionally, this court has already held that it will not hear issues based on *Ramirez* that were not raised at trial. *Olsen,* 860 P.2d at 335.

## INEFFECTIVE ASSISTANCE OF COUNSEL

■ Finally, we turn to the issue of whether Lopez received ineffective assistance of counsel, entitling him to a new trial. In determining whether defense counsel's assistance was so inadequate as to constitute lack of counsel under the Sixth Amendment, this court uses the two-pronged test advanced in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The first prong of this test requires the defendant to show that counsel's performance fell below an objective standard of reasonable profes-

sional judgment. *Parsons v. Barnes,* 871 P.2d 516, 521 (Utah 1994). To make this showing, a defendant must " 'identify the acts or omissions' which, under the circumstances," demonstrate counsel's deficient performance. *State v. Templin,* 805 P.2d 182, 186 (Utah 1990) (quoting *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066). The second prong of the *Strickland* test requires the defendant to show that counsel's deficient performance prejudiced the defendant. *Parsons,* 871 P.2d at 522 (citing *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068).

From the time of his arrest until his sentencing, Lopez had three principal attorneys. He contends that his counsel precluded him from presenting an alibi defense by failing to conduct an immediate and thorough investigation of his alibi. However, he has not shown that the investigations of any of his attorneys fell below an objective standard of reasonable professional behavior. We examine each counsel's actions separately but evaluate these actions in light of the representation as a whole. *See State v. Tyler,* 850 P.2d 1250, 1254 (Utah 1993) (explaining that when defendant is represented by more than one counsel, we treat it as single representation for the purpose of determining whether counsel's performance was inadequate).

Lopez told his first counsel, Shelden Carter, that he was in a class at UVCC at the time of the attack. The police soon invalidated this alibi with the discovery that Lopez did not have a class in session at that time. Before Carter could investigate further, Lopez received new counsel, Kent Willis of Elkins and Willis.

Lopez told Willis that he was in the UVCC computer lab at the time of the attack. He also said that he went out to buy pizza for himself and some other students later that morning, around 10 a.m. Willis asked Lopez for the names of people who could verify where he was during the attack, but he could not provide them. He did volunteer to provide the names of people who could testify as to what his "normal routine" was, but Willis did not think that such testimony would be useful.

Willis went to the UVCC computer lab and investigated the possibility of proving that Lopez was in the lab, either by the testimony of witnesses or by a computer record of his "log in" time. The fact that Willis was unsuccessful does not show that his conduct fell below an objective standard of reasonable professional conduct. Also, Willis's decision not to question the students in Lopez's classes about his whereabouts during the time of the attack can be considered sound because none of his classes were in session at that time. Willis's failure to investigate Lopez's pizza-buying activities was also excusable because Lopez said he was not out looking for pizza until one and a half hours after the attack. *See State v. Malmrose,* 649 P.2d 56, 59 (Utah 1982) (explaining that effective representation does not require counsel to perform futile acts) (overruled on other grounds).

By the time Lopez's case went to trial, he was represented by Madsen. The record does not indicate whether Madsen conducted his own investigation or simply accepted the results of Willis's investigation. However, either action would have been reasonable since Madsen could have reasonably relied on Willis's investigation and any further investigation would only have added to a sufficient information base. Madsen's decision not to present an alibi defense at trial was reasonable because Lopez did not have a supported alibi, and Lopez's contradictions concerning his alibi could have been damaging. At any rate, Lopez already indicated in the trial court's hearing on the claim of ineffectiveness of counsel that he was satisfied with Madsen's representation.

Defendant's remaining arguments are without merit. He asserts that counsel incompetently failed to construct an adequate record on the issue of the admissibility of eyewitness identification in accordance with *State v. Ramirez,* 817 P.2d 774 (Utah 1991). However, *Ramirez,* which requires the prosecution to build a foundation for eyewitness identification by using several defined "factors of reliability," was not decided until nine months after Lopez's trial. Thus, as the State points out, defense counsel could not have complied with it. Lopez also complains that Willis incompetently failed to recognize Elkins and Willis's conflict of interest in rep-

resenting Lopez until two months after assuming representation. Whatever damage this conflict of interest may have caused was completely mitigated when Willis withdrew as counsel six months before the trial. Finally, Lopez asserts that the haphazardness of his appeal, the loss of the trial exhibits and court record, the inadequacy of the reconstructed record, and the numerous changes of counsel that he has experienced should entitle him to a new trial. We cannot agree. However inconvenient these things may have been, they do not show that the conduct of any of Lopez's trial counsel fell below the objective standard of reasonable professional judgment. Because Lopez has not satisfied the first prong of the *Strickland* test, we do not need to determine whether he has satisfied the second prong, which requires him to demonstrate that any alleged deficiency of counsel prejudiced his defense. *Parsons,* 871 P.2d at 522.

We affirm.

ZIMMERMAN, C.J., STEWART, Associate C.J., and DURHAM and RUSSON, JJ., concur.